**PRIDEMORE v. SAN ANGELO STANDARD, Inc.**

**No. 3777.**

Court of Civil Appeals of Texas. Beaumont.

Jan. 16, 1941.

Rehearing Denied Jan. 22, 1941.

Baker & Baker and E. M. Critz, all of Coleman, for appellant.

Robert T. Neill, of San Angelo, and W. Marcus Weatherred, of Coleman, for appellee.

WALKER, Chief Justice.

This was an action for libel by appellant, Otto Pridemore, against appellee, San Angelo Standard, Inc., publisher of the newspapers, San Angelo Standard-Times and San Angelo Morning Times. Judgment was for appellee on the jury's verdict, from which appellant prosecuted his appeal to the Austin Court of Civil Appeals. The case is on our docket by order of transfer by the Supreme Court.

On Sunday, October 9, 1938, appellee published in its newspaper, the San Angelo Standard-Times, the following article, reproduced as published except for the italics:

"Grand Jury to
Get Two Cases
In Coke County

"Stapp Murder Trial
Set Here Wednesday;
Call Special Venire

"Two complaints are scheduled for *investigation in 51st district court by the* grand jury in Coke County this week as the regular fall term gets under way Monday morning in Robert Lee. The jury will begin its work after being impaneled by Judge John F. Sutton.

"Highlighting another week of the 119th District Court in Tom Green County will be the Walter Stapp murder case set for trial Wednesday morning. Other criminal cases, including forgery, theft, receiving and concealing, drunken driving and others will be called in numerical order. The petit jury has completed its work and while subject to call it is not believed that it will return for work since a

grand jury is scheduled in 51st District Court convening here Nov. 7.

"Stapp is charged with the fatal shooting of Jack Runnels, San Angelo, the night of Sept. 13, 1937, at The Windmill, a night club on the Ballinger highway. Since the shooting The Windmill has been closed. At the time of the shooting Stapp was an officer at Monahans.

"The Stapp case is set for 9 o'clock with a special venire of 100 men summoned to report at that time. Stapp is represented by B. W. Smith, San Angelo, and Hill D. Hudson, Pecos. W. A. Stroman, 119th district attorney, will prosecute the case.

"Over at Robert Lee, O. C. Fisher, 51st district attorney, will present to the jury complaints charging Otto and George Pridemore, brothers, with swindling by bogus check, *and one for assault to murder.*

"Summoned to report at 10 o'clock Monday for possible grand jury service are:

"R. B. Allen, J. H. Walker, Loyal Schooler, A. N. Counts, G. C. Casey, Delbert Vestel, Fred O. Green, A. N. Rawlings, Herman Carwile, J. S. Craddock, Clayton Caraway, L. C. Robbins, Charles Keeney, C. C. Glenn, George Thomas and S. C. Sayner.

"Mr. Counts, a member of the grand jury panel, is the man to whom it is alleged the Pridemore brothers gave the bogus check. The check was for $635.00 and presented in payment for cattle Jan. 4, 1938, the complaint charges."

On Monday, October 10, 1938, appellee published in its newspaper, the San Angelo Morning Times, the following article, reproduced as published except for the italics:

"Criminal Work
Seated in Local
Court This Week

"Stapp Murder Case
To Be Called For
Trial Wednesday.

"First criminal week of 119th District Court, which opened Sept. 26, will commence at 10 o'clock this morning when Judge O. L. Parish calls the first of 15 cases for which indictments were returned by a grand jury. Another criminal week is set for Oct. 24.

"The case of Walter Stapp, charged with slaying Jack Runnels, Sept. 13, 1937, at The Windmill on the Ballinger highway,

is set for 9 o'clock Wednesday morning. A mistrial was declared at the last term of court when a jury failed to reach an agreement. Representing Stapp will be B. W. Smith, San Angelo, and Hill D. Hudson, Pecos.

"Two complaints will be investigated at Robert Lee this morning when a grand jury of 51st District Court goes into session. Court will continue two weeks.

"O. C. Fisher, district attorney, will present the complaint of Otto and George Pridemore, brothers, charged with swindling by bogus check, *and a complaint for assault with intent to murder*. The Pridemore brothers are charged with giving a bogus check of $635 to A. N. Courts, Coke County, in payment for cattle, Jan. 4, 1938."

On Tuesday, October 11, 1938, appellee published in its newspaper, the San Angelo Morning Times, the following article, reproduced as published except for the italics:

"One Indictment
By Coke Jury
"Chicken Theft is
Charged Against 2
"Standard-Times News Service

"Robert Lee, Oct. 10.—One indictment, charging E. A. Thomason and Delbert Smith with chicken theft, was returned by a grand jury of 51st District Court here today.

"The men, for whom bonds of $500. were set, are alleged to have stolen 12 chickens from Tom Wiginton, of near Robert Lee, Sept. 26, according to O. C. Fisher, district attorney.

"Judge John L. Sutton will call the docket Tuesday morning. The case of Thomason and Smith will come to trial some time during the week.

"The grand jury passed cases in which Otto and George Pridemore were charged with swindling by bogus check in the amount of $635, Jan. 4, 1938, *and one for assault with intent to murder*."

On Wednesday, October 12, 1938, appellee published in its newspaper, the San Angelo Morning Times, the following article, reproduced as published:

"An Apology

"In the Morning Times of Oct. 9, 10, and 11 a statement was made as to Otto and George Pridemore being charged in Coke County with swindling by bogus check; and then, in referring to 'a complaint for assault with intent to murder,' this latter statement was so placed that it might be construed as referring to Otto and George Pridemore although not so intended. There has never been a complaint for assault with intent to murder against either of them. The facts are that while charges as to swindling by bogus check had been filed before a justice of the peace in Coke County in July, 1938, neither of them was indicted by the grand jury, which has adjourned.

"This statement is made in fairness to the Pridemore brothers and as a public apology to each of them."

Appellant charged in his petition that the language copied above in italics constituted a libel against him, and on the allegations of his petition he stated a cause of action for libel.

We give appellee's summary of its answer:

"The allegations of Defendant's First Amended Original Answer need not be copied. For the present purpose it suffices that it alleges that when the Coke County grand jury convened at Robert Lee Monday, October 10, 1938, there was on file in the Justice court, Precinct No. 1, a complaint against both plaintiff and his brother George for swindling by a bogus and worthless check in the sum of $635, charging each of them with thereby unlawfully acquiring twenty-four head of cattle from A. N. Counts; that payment of the check had been refused; that the two Pridemores had given bond to appear that day (October 10) before the grand jury at Robert Lee.

"Defendant also alleged that at the very same time there was on the docket of the Justice of the peace of Precinct No. 2 a criminal complaint against J. H. (Slim) Taylor and Orvil McKinney for an affray; that Mr. O. C. Fisher, the district attorney, told defendant's reporter that upon the convening of the grand jury, he would present complaints against the Pridemore brothers for swindling by bogus check, and that he would also present a case against a man whose name he could not recall (this turned out to be Orvil McKinney) for assault to murder; and he also told him that A. N. Counts was a member of the grand jury. Defendant alleged that as a matter of fact these complaints actually were presented to the grand jury. It answered further that its statements as to assault to murder referred to Orvil McKinney and not to the

Pridemore brothers, and that plaintiff's inference that such statements referred to him and his brother George was unreasonable and without foundation.

"Defendant then averred that having been advised by the Pridemore brothers' attorney of his contention that the three articles charging them with assault to murder, it asked the privilege of making such explanation in its paper as might satisfy them and—this request being denied—it nevertheless published 'An Apology' which is set out in its amended original answer.

"It pleaded further that it notified Pridemore brothers' attorney by letter of its willingness to do anything else that might appease them. The refusal to admit this letter in evidence is the basis for the Defendant's Bill of Exceptions appearing on page 45 of the Transcript."

The court submitted the case to a jury on the following special issues, all answered in the negative:

"First: Do you find and believe from a preponderance of the evidence that the following article appearing in the San Angelo Standard Times of October 9, 1938, to-wit: 'Over at Robert Lee O. C. Fisher, 51st District Attorney, will present to the grand jury complaints charging Otto and George Pridemore, brothers, with swindling by bogus check, and one for assault to murder.', when read and considered as a part of the entire article offered in evidence conveyed to the average ordinary person reading said article a belief that a complaint would be presented to the grand jury in Coke County charging Otto Pridemore and George Pridemore with the offense of assault to murder?

"(answer yes or no) Answer: No
"A. Broyles
"Foreman

"Second: Do you find and believe from the preponderance of the evidence that the following article appearing in the San Angelo Morning Times of October 10th, 1938, to-wit: 'O. C. Fisher, District Attorney, will present the complaint of Otto and George Pridemore, brothers, charged with swindling by bogus check, and a complaint with assault with intent to murder. The Pridemore brothers are charged with giving a bogus check of $635.00 to A. N. Counts, Coke County, in payment for cattle, January 4th, 1938.', when read and considered as a part of the entire article offered in evidence convey to the average ordinary person reading said article a belief that a

complaint would be presented to the Grand Jury of Coke county charging the plaintiff, Otto Pridemore, and George Pridemore, with the offense of assault with intent to murder?

"(answer yes or no) Answer: No
"A. Broyles
"Foreman

"Third: Do you find and believe from a preponderance of the evidence that the following article appearing in the San Angelo Morning Times on the 11th day of October, 1938, to-wit: 'One indictment by Coke Jury Oct. 10. The Grand Jury passed cases in which Otto and George Pridemore were charged with swindling by bogus check in the amount of $635.00 January 4, 1938, and one for assault with intent to murder,' when read and considered as a part of the entire article offered in evidence, convey to the average ordinary person reading said article the belief that a complaint charging the plaintiff, Otto Pridemore, and George Pridemore, with assault with intent to murder had been presented to and passed by the Grand Jury of Coke County?"

Conditioned on affirmative answers to questions 1, 2, and 3, the court sent to the jury appellant's measure of damages by questions 4, 5, and 6, which, on the negative answers to questions 1, 2, and 3, were *not answered.*

■ We sustain appellant's first point, that the language of the publications copied above in italics, in unambiguous language, stated that a complaint would be presented to the grand jury charging him with assault to murder, and that issues Nos. 1, 2, and 3 submitted to the jury questions of law reserved by our jurisprudence for decision by the trial judge, and not questions of fact for the jury. The very language of the three articles, construed as a whole, negatives any conclusion that the assault to murder charge could have referred to anyone except the Pridemores.

It is the law that: "The defamatory words must refer to some ascertained or ascertainable person and that person must be the plaintiff." Odgers on Libel and Slander, 5th Ed., 147. The only "ascertainable" persons, on the face of the articles, to which the assault to murder charge could have referred, were appellant and his brother.

Since the language complained of was libelous per se and clearly referred to appellant, questions 1, 2, and 3 were for the

court and not for the jury. The following proposition by 37 C.J. 101 sustains this conclusion: "Unless otherwise provided by the statute, whether a particular publication would ordinarily be understood as to have a defamatory effect is generally a question of law, but sometimes the characterizing circumstances are such that it is a question of fact, or of mixed law and fact. As a general rule, it is the province of the court to determine what constitutes defamation abstractly. Hence, if the language is plain and unambiguous, it is a question of law whether or not it is defamatory. If the language is obviously actionable per se, it is the duty of the court so to instruct the jury as a matter of law; and it is not for the jury to say, what defendant meant by making the charge." See also Deen v. Snyder, Tex.Civ.App., 57 S.W. 2d 338, 341 and cases there cited; Southern Pub. Co. v. Foster, Tex.Com.App., 53 S.W. 2d 1014, 1016; Fessinger v. El Paso Times, Tex.Civ.App., 154 S.W. 1171, 1174; Galveston Tribune v. Johnson, Tex.Civ.App., 141 S.W. 302, 305; Caylor v. Nunn, Tex. Civ.App., 235 S.W. 264; Guisti v. Galveston Tribune, 105 Tex. 497, 150 S.W. 874; A. B. Belo & Co. v. Looney, Tex.Civ.App., 246 S.W. 762; Cotulla v. Kerr, 74 Tex. 89, 11 S.W. 1058, 15 Am.St.Rep. 819; El Paso Times v. Eicke, Tex.Civ.App., 292 S.W. 594; Express Pub. Co. v. Isensee, Tex.Civ. App., 286 S.W. 926.

In view of another trial, the points of evidence presented by the appeal should be reviewed. Appellant prayed for actual damages only.

■■■ The court received, over appellant's objections, the following evidence: (a) The bogus check referred to in the published articles in issue; (b) the complaint filed in justice court in Coke county against appellant, charging him with swindling by passing this check; (c) the warrant of arrest issued on the complaint; (d) the bail bond executed by appellant under the warrant; (e) the docket entries made by the justice of the peace on the complaint; (f) the parol testimony of A. N. Counts, payee in the "bogus check," in explanation of the charge that the check was "bogus"; (g) two complaints filed in justice court in Coleman county charging appellant with swindling in passing worthless checks, the docket entries on these charges, and the judgment on appellant's plea of guilty, convicting him of the of-

fense of passing "cold" checks. This testimony was admissible. In assessing the damages suffered by appellant by reason of the libel, the jury should consider the libelous words in their setting, with reference to the articles in their entirety. Times Publishing Co. v. Ray, Tex.Civ.App., 1 S. W.2d 471, Ray v. Times Publishing Co., Tex.Com.App., 12 S.W.2d 165. The libelous words were a part of the very sentence, charging appellant with swindling by passing the "bogus" check. The check charge and the assault to murder charge, both, carried the imputation of moral turpitude. Proof of guilt in passing the check would tend to establish in the minds of the jury the fact that appellant was not an honest man and that he was not a man of good moral character. The basis of his action was for the injury done his reputation. And so, in estimating his damages for the libel in charging him with assault to murder, the jury should assess only such damages, suffered as a man guilty of passing bogus checks. In MacFadden's Publications v. Hardy, Tex.Civ.App., 95 S.W.2d 1023, 1024, it was said: "It is obvious, therefore, that if his reputation was such in the line of the false accusation that the same was not or could not be injured thereby, he was not entitled to compensatory damages in any substantial amount. 27 Tex.Jur. pp. 711, 712, citing George Knapp & Co. v. Campbell, 14 Tex.Civ.App. 199, 36 S.W. 765, 769 (second column)." On the same reasons, the Coleman county complaints and all proceedings thereon, charging appellant with swindling by passing worthless checks, were admissible. It is immaterial, in relation to the Coleman county complaints, that appellant plead guilty to the offense of swindling by passing "cold" checks. The complaints charged him with offenses under the law, and appellant plead guilty to the offenses charged in the complaints and paid his fine.

Evidence in actions for libel is regulated by Article 5431, Vernon's Ann.Civ. Texas Statutes: "In any action for libel, the defendant may give in evidence, if specially pleaded, in mitigation of exemplary or punitive damages, the circumstances and intentions under which the libelous publication was made, and any public apology, correction or retraction made and published by him of the libel complained of. The truth of the statement or statements in such publication shall be a defense to such action."

1054

The following discussion by the Waco Court of Civil Appeals of this article in MacFadden's Publications. v. Hardy, 95 S.W.2d 1023, 1025, directly supports our conclusions on the admissibility of all of this evidence: "Clearly, it was the intent of the Legislature to enlarge, by statutory enactment, the restrictive rules theretofore in force concerning the introduction of testimony in mitigation or reduction of actual damage. The general reputation of the claimant with reference to the trait of character involved in the accusation was already admissible on that issue, but the amendment, in express terms, authorizes the defendant in a libel suit to give in evidence on such issue, if specially pleaded, 'all material facts and circumstances surrounding such claim of damage.' Can it be said with any degree of plausibility that appellant's allegations that appellee had theretofore on two occasions, separated by a considerable period of time, pleaded guilty to or been convicted of an aggregate of twenty-eight separate charges of burglary or felonious theft and had been incarcerated in the state penitentiary in pursuance of such convictions, do not constitute the averment of facts and circumstances material to appellee's claim of damage to his reputation, notwithstanding any variance between the nature of such felonies and the specific felony for which appellee was charged with having been serving a sentence as punishment? Any reasonable objection that appellant's allegations involved the determination of numerous collateral issues is in this particular case obviated by the fact that said allegations involved only final judgments of conviction in the very court in which the cause was being tried and the service thereunder of sentences of imprisonment in the penitentiary. We think proof of the matters alleged was within the provision of the amended article."

There was no plea of guilty by appellant to the offense of passing the "bogus check" named in the article in issue. That point is immaterial, because this was the very check connected with the libel, the basis of appellant's cause of action.

 The complaint and docket entry in relation to appellant's brother George should not have been received in evidence.

 The court erred in receiving in evidence the entries on the docket of the grand jury, to the effect that one Orvil McKinney was charged with assault to murder. This matter was not referred to in the published articles; Orvil McKinney was not referred to in the articles in any way whatever. This evidence was not in explanation of any language of the articles. Also, the testimony of the district attorney in relation to Orvil McKinney was not admissible.

 Appellant did not file a motion for a new trial, on the ground that there was not "full five days from the rendition of the judgment to the adjournment of the court for the term"; it is not contended that there were five full days from the rendition of the judgment to the adjournment of the court. Under Rule 71a, adopted by the Supreme Court on the 9th day of December, 1936, effective the 1st day of March, 1937, reported 99 S.W.2d xxx, appellant was not required to file a motion for a new trial. We overrule appellee's contention that this rule is in violation of the Constitution. Stillman v. Hirsch, 128 Tex. 359, 99 S.W. 2d 270, 275. In adopting this rule the Supreme Court necessarily determined that it was constitutional.

For the reasons stated the judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.