## PRIDEMORE v. SAN ANGELO STANDARD, Inc.

### No. 2277.

Court of Civil Appeals of Texas. Eastland.

June 26, 1942.

Rehearing Denied Sept. 18, 1942.

E. M. Critz and Baker & Baker, all of Coleman, for appellant.

R. T. Neill, of San Angelo, and W. Marcus Weatherred, of Coleman, for appellee.

FUNDERBURK, Justice.

Otto Pridemore brought this suit against San Angelo Standard, Inc., publisher of two newspapers, to recover damages for three libelous articles published in said newspapers. The articles related both to plaintiff and his brother. The first publication appeared October 9, 1938, and was to the effect that the District Attorney "will present to the jury complaints charging Otto and George Pridemore, brothers, with swindling by bogus check, and *one for assault to murder.*" (Italics ours.) The second article published October 10, stated that the District Attorney "will present the complaint of Otto and George Pridemore, brothers charged with swindling by bogus check, *and a complaint for assault with intent to murder.* The Pridemore brothers are charged with giving a bogus check of $635 to A. N. Counts, Coke County, in payment for cattle Jan. 4, 1938." (Italics ours.) The third article published on October 11, 1938 read as follows: "October

860

10. The grand jury passed cases in which Otto and George Pridemore were charged with swindling by bogus check in the amount of $635 January 4, 1938, and *one for assault with intent to murder."* (Italics ours.) The libel pleaded, the recovery of damages for which was prayed, consisted only of the italicised parts of the above quotations. An apology published in the same papers of date October 12, 1938, showed that from the standpoint of the publisher, the reference to a complaint for assault to murder and/or with intent to murder, was not intended to relate to Otto and George Pridemore, but it was acknowledged that the connection in which the language was used made it appear to do so.

The court in response to the decision in a former appeal of the case, Pridemore v. San Angelo Standard, Inc., Tex.Civ.App., 146 S.W.2d 1048, determined, as a question of law, that the articles referred to plaintiff and were libelous, the only issue submitted to the jury being the amount of actual damages. The amount of damages found by the verdict was $1.00 and from the judgment awarding recovery of only $1.00, plaintiff has appealed.

The first question for decision may be stated thus: Under pleadings asserting a cause of action for compensatory damages, in substantial amount, for a libel; and, under evidence conclusively establishing the rights of plaintiff to damages in some amount, is an award in the sum of $1.00 insufficient as a matter of law? "There is no fixed measure of damages", says Corpus Juris, "applicable to actions for defamation. The verdict is open to inspection and revision by the court for the purpose of determining whether the jury was guided by a sound discretion in fixing the damages. Unless the damages are so unconscionable as to impress the court with its injustice, and thereby induce the court to believe that the jury was actuated by passion, prejudice, or partiality, it rarely interferes with the verdict." 37 C.J. p. 128, § 590. Courts have frequently had occasion to determine questions of excessive damages, rarely questions of insufficient

damages. The authority last cited further says: "Certain verdicts have been held excessive, and others not excessive; and, again, *others have been held insufficient."* (Italics ours.) As authority for the latter, only four decisions are cited, three being from the one state of Louisiana and one from New York. (In the latter, the court seems to have held that a judgment for six cents should not be set aside solely upon the ground of insufficiency. Remsen v. Bryant, 36 App.Div. 240, 56 N.Y.S. 728.)

██ In the instant case, the published news items, as pleaded by plaintiff, included the subject-matter of two distinct defamations[1] only one of which was averred to constitute a libel, and for which the recovery of damages was sought. Whether the other defamation—relating to the passing of a bogus check—was libelous or not, it presumably caused some injury to plaintiff just as the libel in suit presumably caused some injury. Damages other than such as resulted from the libel declared upon could not, of course, properly be included in the jury's finding upon the issue of amount of damages. The jury was, therefore, under the practical necessity of segregating the damages resulting from the defamation relating to the bogus check from the damages resulting from the defamation relating to assault to murder (or assault with intent to murder) as a practical means of finding the damages resulting only from the latter. The finding of $1.00 may, in practical reality, be translated as a finding to the effect that in addition to the damages resulting from the charge—true or false—relating to a bogus check, the damages resulting alone from the charge relating to assault to murder (or assault with intent to murder) was the sum of $1.00. A further duty of the jury was to appraise the minimizing effect of the apology published by the defendant. Without attempting to enumerate all the factors that enter into the consideration when all such are considered which it was proper for the jury to consider as the basis of its verdict, we find ourselves unable to say that the finding of $1.00 is so unconscionable as to impress us with its in-

---

[1] Some definitions of defamation include falsity as one of its elements. 36 C.J. 1142, § 2. It is not in such sense we here employ the term. The statement is true: "As a general rule the falsity of defamatory words is presumed" (37 C.J. 85, § 501), but obviously if "defamatory" includes "falsity" such statement constitutes a conspicuous example of tautology. It is believed that one's reputation may be injured by publication of the truth, as well as by publication of that which is false, the difference being material only on a question of whether the utterance be actionable or not.

justice, if any, or to induce us to believe that the jury was actuated by passion, prejudice or partiality. It is, therefore, our conclusion that plaintiff's first point is not sustained.

 It appears there was evidence to the effect that the debt for payment of which the said check for $635 mentioned in the news items was given to A. N. Counts remained unpaid for 21 months, but when it was paid there was added six per cent interest. This testimony was elicited by plaintiff. The defendant then offered the testimony of Counts to the effect that during such time he paid the same rate of interest upon his own indebtedness which the $635 check, had it been paid, would have pro tanto discharged. There is no contention to the effect that the evidence introduced by plaintiff was improper, and we shall, therefore, assume that it was proper. If it was, then in our opinion it was also proper for defendant to parry its effect, if any, with the testimony that Counts paid interest upon his indebtedness. This constitutes the subject-matter of plaintiff's second point, which is overruled.

 The remaining points 3 to 6, inclusive, are·closely related and are believed to be governed by the same principles. The third point calls in review the action of the court in overruling plaintiff's objection to being compelled to testify "with regard to a transaction in the sheriff's office in Tom Green County and the payment by the plaintiff of a fine assessed by the Constable of Coleman County, and not by any court." This and the other points relate to the payment of two fines based upon the passing of bad checks. The point is made that at the time checks were given in payment of the fines, the judgments had not been entered. We think it sufficient to say that in our opinion the judgments of conviction were not void upon their face. We are not prepared to say that the payment of a fine assessed by a void judgment would not be admissible as an admission of guilt, but whether so or not, in our opinion the judgments assessing the fines which plaintiff admits he paid were not void in the sense that they were subject to collateral attack.

It is, therefore, our conclusion that these remaining points should be overruled.

Upon the whole, we think that no reversible error is shown and that the judgment should be affirmed. It is accordingly so ordered.