Stanley STEARNS, Appellant,

v.

Fred McMANIS, Jr., Appellee.

No. 16674.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 29, 1976.

Rehearing Denied Sept. 30, 1976.

Second Motion for Rehearing Denied
Dec. 2, 1976.

Weitinger, Steelhammer & Tucker; Don A. Weitinger, Houston, for appellant.

No brief filed for appellee.

PEDEN, Justice.

Mr. McManis sued Mr. Stearns for slander. A trial jury found that McManis, who bred, raised, bought, and sold Saint Bernard dogs and operated a kennel, was entitled to $200 as actual damages and $1,000 as exemplary damages because Stearns maliciously called him a "puppy miller." The term is considered disparaging by dog fanciers. It describes one whose primary interest is in selling puppies for profit with little concern for their health or for improving the breed.

The appellant's points of error are based on the jury's findings of malice and exemplary damages and on the absence of a finding of special damages. We affirm the judgment of the trial court.

Stearns met McManis through McManis' newspaper ad offering Saint Bernard puppies for sale. Stearns, unlike McManis, had considerable expertise in the breeding, training, and showing of Saint Bernards. He offered to help McManis in these areas, and they became friends and co-owners of a Saint Bernard that they showed with some success. Stearns testified he became concerned and expressed displeasure when McManis purchased several puppies in Indiana and brought them to Houston for resale. Stearns indicated his involvement was as a hobby in showing the dogs and in improving the breed. McManis testified to similar interests, but he also built a kennel and brought in Saint Bernards to sell. Their relationship became strained. Later, when McManis applied for membership in a Saint Bernard Club in which Stearns was an original member and served as director, the application was rejected. The witnesses agreed that a high percentage of Saint Bernard dogs have an inherited disease, dysplasia, a serious malformation of the joint between the hip bone and the pelvis. It can be reduced only by careful selection of the dogs for breeding.

The jury found in response to special issues (as indicated) that 10) Stearns told others that McManis was a puppy miller; 11) the statement was false; 11–A) but Stearns believed it was true; 11–B) Stearns made the statement only to members of the Saint Bernard Club; 12) Stearns used the term puppy miller in such a manner that it impeached the virtue or reputation of McManis; 16) $200 would reasonably compensate McManis for his damages; 17) the statement was made with malice; and 18) McManis was entitled to $1,000 as exemplary damages. Malice was defined as "ill will, bad or evil motive of (sic) such gross indifference to the rights of others as will amount to a willful or wanton act."

The appellant complains in points of error five through eight that the court erred: (5) in not submitting an issue on special damages as special damages must be proven to sustain an action for slander, (6) in entering judgment for plaintiff on the jury's answer to Special Issue No. 16 that awarded general damages as there was no evidence of special damages, (7) in entering judgment upon and in failing to set aside the general damage finding, Special Issue No. 16, as the evidence of special damages was factually insufficient, and (8) was against the great weight and preponderance of the credible testimony.

The appellee did not file a brief. The appellant points out that there was no finding that the statement complained of was actionable per se and argues that where the defamatory words are not actionable per se special damages must be proved in order to sustain an action for slander.

Special Issue No. 16 stated:

"What sum of money, if any, if paid now in cash do you find from a preponderance of the evidence would reasonable compensate the Plaintiff for his damages, if any, sustained as a direct and proximate result of such false statement or statements, if any, found by you in answer to Special Issue No. 14 and/or Special Issue No. 11?"

The appellant objected to the submission of this issue because:

". . . the Plaintiff has failed to show any items of special damages which must be required before there can be a finding of general damages in a slander case."

Defamatory language may be actionable *per se* (in itself) or actionable *per quod* (only on allegation and proof of special damages). The distinction is based on a rule of evidence, the difference between them lying in the proof of the resulting injury. *Arant v. Jaffe*, 436 S.W.2d 169 (Tex.Civ.App.1968, no writ), citing 36 Tex. Jur.2d 280, Libel and Slander, § 2. In general, "oral words, however, though false and opprobrious, are not actionable without pleading and proof of special damages un-

less they impute to another the commission of a crime or affect a person injuriously in his office, profession or occupation . ." Under the exception that makes false words spoken of another's condition or conduct actionable *per se* as will affect one in his office, business or profession, the words must touch him in some way that is harmful to one engaged in his particular office, business or profession. *Buck v. Savage*, 323 S.W.2d 363 (Tex.Civ.App.1959, writ ref. n. r. e.), citing 3 Restatement of Torts 177–181, § 573 and 53 C.J.S. Libel and Slander § 32, p. 78. If the language is clearly actionable *per se*, the court may and should instruct the jury that it is so as a matter of law, and should not leave its character to them for determination, 36 Tex.Jur.2d 484, Libel and Slander § 156; *Pridemore v. San Angelo Standard*, 146 S.W.2d 1048 (Tex.Civ.App. 1941, writ dism. judgm. corr.).

■ We presume in support of the trial court's judgment that the use of the term puppy miller was determined by the judge to be actionable *per se*, and we hold that he was entitled to do so under the evidence in this case. There was uncontradicted evidence that McManis was in the business of buying and selling Saint Bernard puppies and that the disparaging words would be peculiarly harmful to one engaged in that business.

■ Further, points of error 7 and 8 were not preserved for appellate review by complaint in the motion for new trial, which stated only that the trial court failed to set aside the finding of actual damages. A trial court cannot refuse to enter judgment because the evidence was factually insufficient (if it is more than a scintilla) or because the finding was against the great weight of the evidence. Only a "no evidence" point was preserved. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas Law Review 361.

■ The appellant contends in his ninth point that the statement was qualifiedly privileged. It is settled that qualified privilege is an affirmative defense in the nature of confession and avoidance. *Denton Pub-*

*lishing Co. v. Boyd*, 460 S.W.2d 881 (Tex. 1971). There were no pleadings raising that defense, nor were any issues based on it submitted or requested. The appellant has waived it. Rule 279, Texas Rules of Civil Procedure, provides:

"Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived; . . ."

Stearns' first point of error is:

"The trial court erred in entering judgment for the plaintiff on the jury findings to Special Issues Nos. 17 and 18 and awarding exemplary damages because there was no evidence that raised an issue of fact of actual or express malice on defendant's part in delivery of slanderous communication."

■ In considering no evidence points we must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

"The character of malice that must be shown to warrant the recovery of exemplary damages is not entirely clear. Generally, it is said that the malice must be actual or express, and not merely imputed. On the other hand, it has been held that malice implied or inferred from the wrongful act committed is sufficient. Possibly resolving these apparent inconsistencies, it has been said that necessary malice may be shown by evidence of personal ill will or animosity on the part of the defendant toward the plaintiff, or it may be inferred where the libelous article was recklessly or carelessly published, that in some cases this is referred to as 'express malice' and others as 'implied malice,' and that this distinction is in name rather than in fact because it is malice whether it is proved by direct evidence in the one case, or inferred from reckless or carelessness in the other." 36 Tex.Jur.2d 397–398, Libel and Slander § 95.

■ Malice may be established by proof of facts and circumstances from which it may reasonably be inferred. It may be shown by, among other things, proof that the defendant entertained ill-will toward the complaining party. *Buck v. Savage*, 323 S.W.2d 363 (Tex.Civ.App.1959, writ ref. n. r. e.). In our case, McManis testified without contradiction that the parties were good friends until, prior to the date when the defamatory statement was made, they had an argument during a bridge game. Stearns told members of the Saint Bernard Club of his dislike for McManis and said that if McManis was admitted to the club he would get out. He testified that it appeared they could not be friends and could not get along in a reasonable fashion.

■ Stearns called no witnesses and his own testimony was given only on examination by opposing counsel. As we have noticed, the jury found the defamatory statement was false, that Stearns believed it was true, and that it was made with malice. No issue was submitted or requested asking whether Stearns had reasonable grounds for believing the statement was true, and the jury was entitled to conclude from the evidence that Stearns was unreasonable in calling McManis a puppy miller. Stearns testified that ". . . profit is the one thing that I maintain is impossible and immoral to obtain from breeding these dogs . . ." He also related that he "gradually and painfully over a period of a few years and rather suddenly in that summer of 1970" learned that McManis was attempting to earn money buying and selling dogs. He said learning this "was a really rude shock." After that, although he and McManis were co-owners of a Saint Bernard dog and he could reasonably have been expected to have regularly seen her at McManis' kennels, it does not appear that he did. The jury was entitled to conclude that he felt so much ill-will toward McManis that he was unwilling to fairly and reasonably observe McManis' operation of his kennel while visiting his dog and thus incidentally investigate the truth of his defamatory statement even though he had good

reason to do so. We overrule the first point of error.

■ The appellant did not preserve, in his amended motion for new trial, factual sufficiency or great weight points for his second and third points of error. The only assignments of error to which these points are germane are those alleging that the trial court erred in *entering judgment* on the answers to Special Issues 17 and 18 because the evidence was insufficient and because the findings were against the great weight of the evidence. These objections preserve only "no evidence" points. *Chemical Cleaning, Inc. v. Chemical Cleaning & Equipment Service, Inc.*, 462 S.W.2d 276 (Tex.1970).

The appellant's fourth point is that the trial court erred in entering judgment upon and in failing to set aside the exemplary damage finding, Special Issue No. 18, as the statement was qualifiedly privileged. We overrule this point for the same reason we gave in overruling the ninth point.

Affirmed.

### ON MOTION FOR REHEARING

■ We withdraw the holding in our previous opinion that the appellant had waived the affirmative defense of qualified privilege. We agree with him that special issues 11A and 11B submitted that defense. As we noted, the jury found in response to those issues that when Stearns uttered the defamatory statement (sic) he believed it to be true and that such statements were made only to members of the Saint Bernard Club. The appellant's ninth point of error is that the trial court erred "in entering judgment upon and in failing to set aside the general damage finding . . . as the statement was a qualified privilege."

Qualified privilege comprehends all communications made in good faith on any subject matter in which the author has an interest, or with reference to which he has a duty to perform to another person having a corresponding interest or duty. 36 Tex.Jur.2d 357, 358, Libel and Slander § 71.

However, the privilege is lost if the defendant was in any degree actuated by malice in making or publishing the defamatory statement. Neither does the privilege exist if he who utters the statement was actuated by malice in part and in part by lawful motive. *Butler v. Central Bank & Trust Co.*, 458 S.W.2d 510 (Tex.Civ.App. 1970, writ dism.); *Cranfill v. Hayden*, 97 Tex. 544, 80 S.W. 609 (1904).

The appellant complains in his first point of error that there was no evidence to support the jury's finding, in response to the 17th special issue, that he made the statement in question with malice.

In cases involving qualifiedly privileged defamation, although the existence of actual or express malice is not presumed as a matter of law and must be proved, it need not be proved by direct or extrinsic evidence; its existence is sufficiently shown by evidence of facts and circumstances from which it is reasonably inferable. It may be inferred from the relation of the parties, the circumstances attending the publication, the language used, and from the words or acts of the defendant before, at, or after the time of the communication; but there must be evidence from which the jury can infer malice existing at the time of publication and actuating it. Malice is not implied or presumed from the mere fact of the publication, nor may it be inferred alone from the character or vehemence of the language used, nor found from the falsity of the statement alone. 36 Tex.Jur.2d 475, Libel and Slander, § 149.

There was other evidence of the defendant's ill-will toward the plaintiff in addition to that we noted in our opinion. There was testimony that pursuant to the parties' agreement, the plaintiff fed, kept, and cared for Pandora at considerable expense to him but could not derive any of his contemplated benefits of ownership because the defendant quit showing her and refused to carry out his agreement to have her bred. Further, when the plaintiff let a friend temporarily keep a second dog co-owned by the parties, the defendant demanded that the plaintiff take the dog back even though this resulted in expense to the plaintiff. The plaintiff bore the expense of providing for the co-owned dogs for a total of 3,202 days, but the defendant wouldn't even discuss his share of the expense.

The plaintiff also said that the defendant became critical of him and called his price exorbitant even though the puppies the defendant was selling were far inferior to the ones the plaintiff was bringing in and the parties were charging about the same prices. The jury was entitled to conclude that the defendant's dealings with the plaintiff concerning the dogs that the parties had jointly purchased were so unreasonable as to demonstrate his jealously, personal animosity and ill-will toward the plaintiff.

The motion for rehearing is denied.