COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-229-CV

VIRGIL BINGHAM APPELLANT

V.

SOUTHWESTERN BELL YELLOW APPELLEES

PAGES, INC. AND STEPHEN BROWN

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1) ON REHEARING

------------

On Appellant’s motion for rehearing, we withdraw our opinion and judgment of September 20, 2007, and substitute the following.  Our ultimate conclusions remain unchanged.

I.  Introduction

In this defamation case, Appellant Virgil Bingham appeals from the trial court’s grant of summary judgment in favor of Appellees Southwestern Bell Yellow Pages, Inc. (“SWBYPS”) and Stephen Brown.  In his sole appellate issue, Appellant contends that the trial court erred in granting Appellees’ motion.
(footnote: 2)  We affirm.

II.  Factual and Procedural Background

Appellant was a long-time employee of SWBYPS who worked under Brown as a Senior Account Representative in the company’s Fort Worth sales office.  On January 15, 2004, Brown suspended Appellant pending the outcome of an internal investigation into allegations concerning Appellant’s mishandling of customer advertising accounts.  At the conclusion of the investigation, Brown summoned Appellant back to work and demoted him to a lesser sales position.
(footnote: 3) 

Appellant responded by filing the underlying suit against Appellees, alleging slander and slander per se after learning of two meetings that Brown held with Vicki Rowland and Bryan Burkhart, two of Appellant’s coworkers,
(footnote: 4) during his suspension period.  Appellant claimed that, in those meetings, Brown slandered him by comparing his alleged misconduct to that of a former employee (“Holleyhead”) who had been terminated for forging customers’ signatures on advertising contracts.  Appellant also alleged that during the course of those meetings Brown showed Rowland and Burkhart some of the forged contracts contained in the former employee’s file and insinuated that Appellant was also a forger and a thief and that he could not be trusted.  

Appellees filed a traditional motion for summary judgment with respect to all of Appellant’s claims; Appellant filed a timely response with evidence of his own.  In the motion, Appellees asserted that (1) any statements made by Brown during the course of his meetings with Rowland and Burkhart are not capable of having a defamatory meaning, (2) Brown’s alleged statements are covered by a qualified privilege, and (3) Appellant’s claim for damages must fail as a matter of law.

The parties filed evidence recounting the alleged defamatory statements from the perspective of Brown, Rowland, and Burkhart.  Brown described the events that transpired during the course of his meeting with Rowland as follows:

[Rowland] came to my office and was visibly upset.  I sensed she was concerned about her job in light of [Appellant’s] suspension.  In an effort to comfort Ms. Rowland, I explained to her that she did not need to be concerned about her job because SWBYPS does not make employment decisions flippantly.  In an effort to convey to her the lengths SWBYPS goes to before making an employment decision, I referred her to a voluminous investigative file on my credenza related to an employee who had been previously terminated.  I believed that the thickness of the this file would convey to Ms. Rowland the type of investigation SWBYPS conducts prior to making employment decisions. 

In her deposition, Rowland testified that Brown did not say that Appellant  had engaged in conduct similar to that of Holleyhead.  In her summary judgment affidavit, Rowland averred that Brown began discussing Appellant’s suspension, then walked over to a file cabinet and retrieved a large manila envelope from on top of the cabinet.  Brown removed several documents and proceeded to show her that customers’ signatures had been forged on SWBYPS contracts. She asked Brown if the papers were Appellant’s, and Brown said no, they were Holleyhead’s.  She averred that she “immediately thought to myself that [Brown] was comparing the [Holleyhead] forgeries with why he suspended [Appellant].” 

With respect to his meeting with Burkhart, Brown averred:

On or about the next workday following my conversation with Ms. Rowland, Bryan Burkhart came to my office to discuss [Appellant’s] suspension.  At the time of the conversation, I understood that I was talking to Mr. Burkhart in his capacity as Union Steward.  As with Ms. Rowland, I explained to Mr. Burkhart that SWBYPS does not make employment decisions flippantly.  

Burkhart testified that during a twenty to thirty-minute “informal” meeting with Brown,

[W]e discussed things that reps had done in the past that were against company policy that had caused some people a lot of years of service to no longer work for the company, you know, that [Appellant] had a lot of years.

And then he showed me where this [Holleyhead] had had a lot of years.  And he proceeded to show me basically from a distance what she had done in some sort of forgery, a way of running forgery off a copying machine that cost -- ultimately cost her her job.

. . . .

He was showing me -- I didn’t really pay that much attention because he was doing some sort of acetate.  He did come over to the other side of the desk, the side of the desk I was on, with the information and did some sort of acetate thing showing me something on signatures. . . .       

I really felt like that at that point that he was, I don’t know, maybe preparing for what maybe was going to happen to [Appellant]. 

III.  Standard of Review
 

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant
, 73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
Sw. Elec. Power Co.
, 73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.  
Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

A defendant who conclusively negates at least one essential element of the plaintiff’s cause of action is entitled to summary judgment on that claim.  
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
, 143 S.W.3d 794, 798 (Tex. 2004).  
Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.  
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).
  When, as in this case, a trial court grants the defendant’s motion without specifying the ground upon which it based its ruling, the summary judgment will be affirmed if any of the theories advanced are meritorious.  
Carr v. Brasher
, 776 S.W.2d 567, 569 (Tex. 1989).

IV.  Discussion

A. Appellant’s Claim for Damages

Appellees argue that summary judgment was proper in this case because, as a matter of law, Appellant suffered no damages as a result of Brown allegedly defaming him.  Appellant counters by arguing, as he did in his response in the trial court, that damages are presumed in slander per se cases. 

1. Slander Per Se Claim

A defamatory oral statement may be slander per se, that is in and of itself, or slander per quod.  
Minyard Food Stores, Inc. v. Goodman
, 50 S.W.3d 131, 140 (Tex. App.—Fort Worth 2001), 
rev’d on other grounds
, 80 S.W.3d 573 (Tex. 2002).  If a statement is slanderous per se, no independent proof of damage to the plaintiff’s reputation or of mental anguish is required, as the slander itself gives rise to a presumption of general damages.
(footnote: 5)  
Bentley v. Bunton, 
94 S.W.3d 561, 604 (Tex. 2002); 
Mustang Athletic Corp. v. Monroe
, 137 S.W.3d 336, 339 (Tex. App.—Beaumont 2004, no pet.) (citing
 Leyendecker & Assocs., Inc. v. Wechter
, 683 S.W.2d 369, 374 (Tex. 1984) (op. on reh’g)).  However, if the statement constitutes slander per quod, the plaintiff must plead and present proof of special damages in order for the alleged defamation to be actionable.  
Kelly v. Diocese of Corpus Christi
, 832 S.W.2d 88, 94 (Tex. App.—Corpus Christi 1992, writ dism’d w.o.j.); 
Stearns v. McManis
, 543 S.W.2d 659, 662 (Tex. Civ. App.—Houston [1st Dist.] 1976, writ dism’d); 
see Minyard Food Stores, Inc.
, 50 S.W.3d at 140.

Statements are slanderous per se if they are so obviously harmful to the person aggrieved that no proof of their injurious effect is necessary to make them actionable.  
Shearson Lehman Hutton, Inc. v. Tucker
, 806 S.W.2d 914, 921 (Tex. App.—Corpus Christi 1991, writ dism’d w.o.j.).  Matters characterized as slanderous per se are statements that impute the commission of a crime or cause injury to a person’s office, business, profession, or calling.  
Minyard Food Stores, Inc.
, 50 S.W.3d at 140. 
 
Here, Appellant claims that Brown labeled him a forger in the eyes of his coworkers, Rowland and Burkhart, by implicitly comparing his alleged misconduct with that of Holleyhead.  Thus, Appellant argues that Brown’s statements, coupled with his conduct during the meeting, were slanderous per se as they “imput[ed] unethical and criminal actions . . . [to Appellant], and did injure [him] in his occupation.”  We disagree.

Whether language is capable of having a defamatory meaning is a question of law for the trial court.  
Musser v. Smith Protective Serv., Inc.
, 723 S.W.2d 653, 655 (Tex. 1987). 
 In determining this question, the court construes the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement.  
Id. 
at 654-55.  If the statement, seen in this light, has but one clear and obvious meaning, then no further inquiry is necessary.  
Gray v. HEB Food Store No. 4.
, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, writ denied) (“If a statement unambiguously and falsely imputes criminal conduct to plaintiff, it is defamatory per se.”).  However, if the statement is ambiguous, or if the full effect of the statement cannot be understood without the use of extrinsic evidence, then the trial court must go beyond the snapshot of time in which the statement was published and consider innuendo.  
Moore v. Waldrop, 
166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.).
(footnote: 6)  An innuendo may be used to explain but not to extend the effect and meaning of the language asserted to be actionable.  
Simmons v. Ware, 
920 S.W.2d 438, 451 (Tex. App.—Amarillo 1996, no writ).  In some cases, the consideration of innuendo and extrinsic evidence is the only way to know whether a statement is slanderous.  
Moore, 
166 S.W.3d at 386.  

The test for actionable innuendo is not what construction a plaintiff might place upon the statements, but rather, how the statement would be construed by the average reasonable person or the general public.  
Simmons,
 920 S.W.2d at 451; 
Arant v. Jaffe
, 436 S.W.2d 169, 176 (Tex. Civ. App.—Dallas 1968, no writ)
.
 
 Again, it is the court’s duty to determine if the statements at issue are, in their natural meaning, capable of the defamatory interpretation ascribed to them by the innuendo.  
Simmons, 
920 S.W.2d at 451.  However, as explained by the Waco Court of Appeals, 
“once innuendo is being considered, the statement has moved beyond the analysis of slander 
per se
 and into that of slander 
per quod
, because . . . 
[t]he very definition of ‘per se,’ ‘in and of itself,’ precludes the use of innuendo.
  
If the statement, taken by itself and as a whole, is per se slanderous, it will require no extrinsic evidence to clarify its meaning.”  
Moore, 
166 S.W.3d at 386.

In this case, Appellant has not identified the specific words he contends are defamatory per se.  But it is clear from Rowland’s and Burkhart’s testimony that Brown did not explicitly say that Appellant was a thief, that he was a forger, or even that Appellant had done something similar to what Holleyhead had done.  Instead, Appellant relies on Rowland’s and Burkhart’s testimony about what they 
inferred
 from Brown showing them forgeries from Holleyhead’s file after or while discussing Appellant, namely, that Appellant had forged signatures like Holleyhead had.  

This is a prime example of innuendo.  Brown did not say anything that was itself defamatory.  Instead, Appellant relies on extrinsic evidence—what Brown showed to Rowland and Burkhart, and what they inferred—to show that Brown’s words, when considered in light of his actions, had a defamatory meaning not immediately clear to the average reasonable person or the general public.

Appellant contends that Brown “made it clear” to Rowland and Burkhart that the former employee’s “conduct should be compared in mirror-image fashion” with the misconduct for which Appellant had been suspended.  In support of his position, Appellant points to Rowland’s deposition in which she stated that after being shown the former employee’s file “I immediately thought to myself that Mr. Brown was comparing [Holleyhead’s] forgeries with why he suspended [Appellant].”  Rowland also testified that she knew that Holleyhead had been fired for forgery and, therefore, assumed that Brown was implying that Appellant had engaged in similar conduct. 

However, standing alone, Brown’s act of displaying forged contracts while discussing the termination of a former employee did not 
unambiguously
 impute any criminal conduct 
to Appellant
.  This is shown by the fact that Burkhart and Rowland each interpreted Brown’s actions during their respective meetings differently.  Unlike Rowland, Burkhart testified in his deposition that he did not interpret Brown’s act of displaying the forged contracts as equating Appellant’s alleged misconduct with that of the former employee.  Rather, Burkhart said:

I didn’t think that he was—I don’t think that Mr. Brown was comparing the two because they were two separate issues of what had actually transpired and what [Appellant] was being accused of versus what [Holleyhead] had done.  

. . . .

I [felt] like that there was a comparison being made in that this was a serious enough offense, and that what [Holleyhead] had done, had been terminated over, and that it was implied that [Appellant] had done this same serious type of action, had taken severe–had done something as wrong as she had.  

Additionally, Rowland testified at her deposition that immediately after being shown Holleyhead’s file, she asked Brown whether the forgeries contained therein related in any way to Appellant.  According to Rowland, Brown answered “no.”  Rowland also stated that Brown never expressly referred to Appellant as a thief or a forger or said that he could not be trusted. Although Brown’s statements and conduct 
may
 constitute slander per quod when innuendo is considered, absent such considerations, they were not per se slanderous so as to absolve Appellant from proving special damages.  
Id.
 at 386-87.

2. Appellees Conclusively Negated Special Damages

Assuming, without deciding, that Brown’s statements and conduct during his meetings with Rowland and Burkhart were sufficient to constitute slander per quod, we nonetheless conclude that the trial court did not err in granting Appellees’ motion for summary judgment because Appellant’s claim for damages fails as a matter of law.

In his amended petition, Appellant pleaded and sought recovery for the following special damages:  (1) past and future lost earnings and (2) past and future loss of earning capacity. 
 Appellees countered by filing for summary judgment challenging, among other things, Appellant’s claim for damages.  In order to properly obtain summary judgment on this ground, Appellees were required to conclusively negate the existence of those damages.  
See 
Tex. R. Civ. P.
 166a(c); 
Tate v. Goins, Underkofler, Crawford & Langdon, 
24 S.W.3d 627, 635 (Tex. App.—Dallas 2000, pet. denied).  Here, Appellees negated Appellant’s special damage claim by producing the transcript of his own deposition in which he admitted to being unaware of any money that he has lost at present as a result of Brown allegedly defaming him.  Appellant testified that he anticipated a “potential of loss of income in the future” but stated that it was “hard to say” what, if any, future income would be lost.  

While uncertainty as to the amount of damages is not fatal to recovery, lack of evidence or uncertainty as to the fact of damages is.  
See Pace Corp. v. Jackson
, 155 Tex. 179, 190, 284 S.W.2d 340, 348 (1955).  Damages must be ascertainable in some manner other than by mere speculation or conjecture, and by reference to some fairly definite standard, established experience, or direct inference from known facts.  
A.B.F. Freight Sys., Inc. v. Austrian Import Serv., Inc.
, 798 S.W.2d 606, 615 (Tex. App.—Dallas 1990, writ denied).  Remote damages, or those damages that are purely conjectural, speculative, or contingent, are too uncertain to be ascertained and cannot be recovered.  
See Westech Eng’g, Inc. v. Clearwater Constructors, Inc.,
 835 S.W.2d 190, 205 (Tex. App.—Austin 1992, no writ); 
Roberts v. U.S. Home Corp.
, 694 S.W.2d 129, 135 (Tex. App.—San Antonio 1985, no writ).     

Once Appellees met their burden to conclusively negate the existence of Appellant’s alleged special damages, the burden shifted to Appellant to produce
 competent controverting evidence in support of the damages pleaded.  
See Centeq Realty, Inc.
, 899 S.W.2d at 197.  In his response to Appellees’ motion, Appellant simply argued, as he does here, that Brown’s statements were slanderous per se and, therefore, damages are presumed. 
 Despite submitting 135 pages of summary judgment evidence in support of his response, he failed to cite the trial court to any evidence raising a genuine issue of material fact as to whether Brown’s allegedly defamatory statements and conduct had caused him economic or pecuniary loss.  He also failed to address the issue in his brief or cite us to any such evidence on appeal.  Trial and appellate courts are not required to sift through voluminous deposition transcripts and other summary judgment evidence in search of evidence raising a fact issue.  
See Shelton v. Sargent
, 144 S.W.3d 113, 120 (Tex. App.—Fort Worth 2004, pet. denied).  Therefore, in the absence of any controverting evidence, we conclude that Appellees were entitled to summary judgment on the ground that Appellant suffered no damages as a matter of law.
(footnote: 7)  Because we hold that Appellees are entitled to summary judgment on this ground, we need not address the remaining grounds presented in their motion.  
FM Props. Operating Co. v. City of Austin, 
22 S.W.3d 868, 872-73 (Tex. 2006) (holding where summary judgment does not specify grounds relied on, reviewing courts are to affirm if any ground is meritorious); 
Ross v. Arkwright Mut. Ins. Co., 
892 S.W.2d 119, 130 (Tex. App.—Houston [14th Dist.
]
 1994, no writ) (recognizing that because defendant is entitled to summary judgment based on its negation of damage element of plaintiff’s claim, it is unnecessary to consider remaining grounds presented in the motion).  

V.  Conclusion

Accordingly, we overrule Appellant’s issue and affirm the trial court’s judgment.  

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and GARDNER, JJ.

DELIVERED:  January 17, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
This point is sufficient to challenge the summary judgment on all grounds upon which it could have been granted.  
See 
Malooly Bros., Inc. v. Napier
, 461 S.W.2d 119, 121 (Tex. 1970)
; 
see also Star-Telegram, Inc. v. Doe, 
915 S.W.2d 471, 473 (Tex. 1995) (reaffirming 
Malooly).

3:
Appellant’s demotion and suspension are not at issue in this case.  Appellant has since filed a grievance with regard to those events pursuant to a collective bargaining agreement and is pursuing his remedy in a labor arbitration under the terms of that agreement.  

4:
In addition to being an employee of SWBYPS, Burkhart also served as the office’s union representative. 

5:
Compensatory damages in defamation cases are divided into two categories: general and special.  
Peshak v. Greer
, 13 S.W.3d 421, 427 (Tex. App.—Corpus Christi 2000, no pet.).  General damages are damages for injuries to character or reputation, injuries to feelings, mental anguish, and other like injuries incapable of monetary valuation, 
Vista Chevrolet, Inc. v. Barron, 
698 S.W.2d 435, 441 (Tex. App.—Corpus Christi 
1985, no writ), while special damages involve some form of pecuniary or economic loss  
See Hurlbut v. Gulf Atlantic Life Ins. Co., 
749 S.W.2d 762, 767 (Tex. 1987).

6:
Innuendo is the use of extrinsic evidence to prove a statement’s defamatory nature.  
Id.
 at 385.  
It includes the aid of inducements, colloquialisms, and explanatory circumstances.  
Id.

7:
Without proof of special damages, Appellant’s slander per quod claim is not actionable.  
Kelly,
 832 S.W.2d at 94; 
Stearns, 
543 S.W.2d at 662.  Thus, we need not discuss the general damages sought in Appellant’s amended petition.  
See Kelly, 
832 S.W.2d at 94.