VISTA CHEVROLET, INC., Appellant,

v.

Reginald I. BARRON, Appellee.

No. 13–84–236–CV.

Court of Appeals of Texas,
Corpus Christi.

Sept. 26, 1985.

Rehearing Denied Oct. 31, 1985.

Michael G. Mullen, Brown, Maroney, Rose, Barber & Dye, Austin, Rick Rogers, Corpus Christi, for appellant.

David Atnip, Stephen L. Burkett, Burkett & Burkett, Corpus Christi, for appellee.

Before BENAVIDES, J., NYE, C.J., and SEERDEN, J.

## OPINION

BENAVIDES, Justice.

This is a slander case. Appellee Barron filed suit against Vista Chevrolet, Inc. and Phillip E. Neesen, seeking actual and exemplary damages as compensation for harm done and injuries suffered from the actions of Vista Chevrolet in reporting to the Corpus Christi Police Department and the police department of Ithaca, New York, that Barron had stolen one of its vehicles.

Trial was to a jury which found that the reports made by Vista Chevrolet were false and made with malice. The trial court entered judgment on the verdict against Vista Chevrolet for $500,000.00 in actual, and $250,000.00 in exemplary damages.

In its second point of error, appellant alleges error in the manner in which the trial court submitted appellant's liability to the jury. The special issues were all phrased in terms of *malice;* appellant repeatedly objected that the correct standard was the *New York Times "actual malice"* standard. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

There is no dispute between the parties that appellant's report to the authorities was privileged, and the jury was so instructed. Appellant alleges that such a communication has been held absolutely privileged, citing *Reagan v. Guardian Life Insurance Co.,* 140 Tex. 105, 166 S.W.2d 909 (1942), but concedes that this Court has held the privilege to be a qualified one. *Zarate v. Cortinas,* 553 S.W.2d 652, 655 (Tex.Civ.App.—Corpus Christi 1977, no writ). *Reagan* is not on point for the same reason previously stated in *Zarate.*

The issue before us is whether plaintiff must prove malice or actual malice to overcome the conditional or qualified privilege.

Appellant writes in its brief that the actual malice standard was expressly adopted by the San Antonio Court of Appeals in the case of *Southwestern Bell Telephone Co. v. Dixon*, 575 S.W.2d 596 (Tex.Civ.App.— San Antonio 1978), *writ dism'd w.o.j.* 607 S.W.2d 240 (Tex.1980). Actually, *Southwestern Bell v. Dixon* is more properly read as authority for appellee's position that *malice* is sufficient, for the court wrote: "The law is well settled that once a conditional privilege is established, it may be lost by a showing of 'malice' and the burden is on the plaintiff to show malice." 575 S.W.2d at 599. In any event, the San Antonio Court expressly wrote in its opinion that "we need not determine the proper standard to be applied because the trial court submitted the *New York Times* standard without objection from either party." 575 S.W.2d at 600. The Texas Supreme Court also noted the San Antonio Court made no determination, but expressed no opinion on what the proper standard should be. 607 S.W.2d at 242. Thus, the question was left unresolved.

Appellant is correct that the opinion in *Ryder Truck Rentals, Inc. v. Latham*, 593 S.W.2d 334 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.), adopts the actual malice standard in a private individual v. non-media defendant conditional privilege case; however, the dissent in *Ryder* states that the majority holding is in conflict with *Houston Belt & Terminal Ry. v. Wherry*, 548 S.W.2d 743 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.), *cert. denied*, 434 U.S. 962, 98 S.Ct. 497, 54 L.Ed.2d 447 (1977). This issue was also recognized but left undecided in the recent case of *Frank B. Hall & Co. v. Buck*, 678 S.W.2d 612, 620 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

In support of malice as the appropriate standard, appellee cites, among others, the cases of *Houston v. Grocers Supply Co.*, 625 S.W.2d 798 (Tex.App.—Houston [14th Dist.] 1981, no writ); *Wherry;* and this Court's opinion in *Zarate.* In *Houston v. Grocers Supply*, the Fourteenth Court of Appeals expressed itself in terms of "malice" and "want of good faith."

Appellant argues that the qualified or conditional privilege is lost if the communication was made with malice or want of good faith. In a cause of action for libel or slander malice has been defined as "ill will, bad or evil motive, or such gross indifference to the rights of others as will amount to a willful or wanton act." *Buck v. Savage*, 323 S.W.2d 363 (Tex.Civ. App.—Houston 1959, writ ref'd n.r.e.), citing *Lattimore v. Tyler Commercial College*, 24 S.W.2d 361, 363 (Tex.Comm'n App.1930). If a conditionally privileged slanderous communication is in any degree actuated by malice, the privilege is lost. *Bridges v. Farmer*, 483 S.W.2d 939 (Tex.Civ.App.—Waco 1972, no writ). Generally, when publication is made under circumstances creating a qualified or conditional privilege, the plaintiff has the burden to prove malice or want of good faith.

625 S.W.2d at 801.

We find the opinions in *Cheatwood v. Jackson*, 442 S.W.2d 789, 792 (Tex.Civ.App. —Houston [14th Dist.]), *writ ref'd n.r.e., per curiam*, 445 S.W.2d 513 (Tex.1969), a libel case, controlling. On the first appeal, the Fourteenth Court expressed itself in terms of malice. It wrote:

"The summary judgment evidence, however, establishes that the publications alleged were made under circumstances creating a conditional or qualified privilege. This fact imposed upon the plaintiff the burden of proving that the publication was made with malice or a want of good faith."

442 S.W.2d at 792. Elsewhere in the opinion the Fourteenth Court wrote:

It is true that upon a regular trial the plaintiff would have the burden of proving malice or want of good faith since the publications were conditionally privileged, but on motion for summary judgment by the defendant he, as movant, had the negative burden of proving the

absence of such malice and the presence of good faith.

*Id.* at 793.

On further appeal, the Supreme Court of Texas wrote the following:

"Since the defendant, though enjoying a conditional privilege, would be liable if actuated by malice, it must fall to him to establish the absence of malice on his motion for summary judgment."

*Jackson v. Cheatwood,* 445 S.W.2d 513, 514 (Tex.1969) (per curiam).

■ In light of the Supreme Court's statement that a conditional privilege is lost if the defendant is actuated by malice, and our own statement in *Zarate* that the qualifying criterion for such a privilege is that the statements must be made in good faith and without malice, we hold that in the case of a false complaint to the authorities, plaintiff need only show that defendant acted with malice in order to defeat defendant's conditional privilege.[1] *See also Marathon Oil Co. v. Salazar,* 682 S.W.2d 624, 631 (Tex.App.—Houston [1st dist.] 1984, writ ref'd n.r.e.). Appellant's second point of error is overruled.[2]

In its first point of error, appellant alleges there is no evidence or insufficient evidence of the actual malice required to overcome a conditionally privileged statement. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in

*Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex. App.—Corpus Christi 1981, writ ref'd n.r. e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L. Rev. 361 (1960).

The evidence at trial showed that appellee was a minority owner of Vista Chevrolet. Appellee owned 17%; Phillip E. Neessen owned 50%; and M.E. Neessen owned 33% of the stock in the corporation. Appellee had an option to purchase the 33% share of M.E. Neessen, thus, the opportunity to become an equal co-owner.

Appellee was black, and there was evidence that the Chevrolet division of General Motors awarded the franchise to the Neessens on the condition of minority participation in the dealership. When Phillip E. Neessen requested permission from Chevrolet to purchase 2% of his father's stock, permission was denied. When Reginald Barron learned of Phillip's request, he confronted Phillip Neessen whereupon Phillip Neessen told Barron he "wanted him out."

Barron declined to leave what he believed to be a lucrative business opportunity, but after further difficulties between Barron and Phillip Neessen and repeated conversations wherein Barron advised Phillip Neessen he did not want to sell out,

---

1. We note that this cause involves certain statements that the jury has found to be slanderous per se that resulted ultimately in a report in the Ithaca, New York police files that appellee was a car thief and caused impoundment of appellee's vehicle. We cannot conceive of how the duty of the police to investigate crime and provide for the police protection of our citizenry can be aided by a test requiring the "actual malice" standard. We realize that the duties of the police in carrying on investigations and identifying and arresting law breakers require that they be able to receive information freely from all possible sources and to be able to trade and use and communicate information within the formal and informal channels of our society; but, we fail to see how this type of information provided herein (false, with malice and in the absence of good faith) can possibly assist them and is so necessary to the proper performance of their duties as to require the "actual

malice" test as opposed to the "malice" test applied by the court framing the issues submitted to the jury.

2. In its brief, appellant cites the case of *Dun and Bradstreet, Inc. v. O'Neil,* 456 S.W.2d 896 (Tex. 1970), for the proposition that "actual malice" must be shown to defeat a conditional privilege. We note that the conditional privilege under consideration in *Dun and Bradstreet* was a publisher's privilege, *id.* at 900, whereas in the instant case the conditional privilege considered involves a report to the authorities. We also note that *Dun and Bradstreet* was decided before *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809 (Tex.1976) which adopted negligence as the standard of liability in a suit by a private individual against a publisher or broadcaster of a defamatory falsehood. *Id.* at 819–20.

Barron finally acquiesced when the Neessens accepted, and Chevrolet Motor Division approved, his offer to resign in exchange for forgiveness of a $68,000.00 note, executed by him to M.E. Neessen; $500,000.00 in cash; clear title to a Chevrolet Citation automobile; and the use for a year of a four-wheel drive Suburban. It was this last term that provoked the instant dispute. Specifically, the agreement, drafted by Barron's attorney, stated:

2. As additional consideration for the execution of the Stock Purchase Agreement, Vista Chevrolet, Inc. and/or M.E. Neessen shall convey title to the Chevrolet Citation demonstrator currently in the possession of Reginald Barron to Mr. Barron simultaneously with the transfer of Mr. Barron's stock. Furthermore, Mr. Barron shall be entitled to the use of a new Chevrolet Suburban four-wheel drive, fully equipped vehicle for a period of one year from the date of the transfer of the stock. Either Neessen or Vista Chevrolet, Inc. shall provide full coverage automobile insurance for said one year period. Such policy shall contain minimum limits of $100,000.00/$300,000.00 for liability and collision; and coverage for personal injury protection, underinsured and uninsured motorist provisions. The deductible shall not exceed $250.00. Vista Chevrolet shall be responsible to accept delivery of the vehicle at the expiration of one year anywhere in the continental United States at its own expense.

As can be seen, the above instrument failed to specifically identify the particular Suburban contemplated by the parties. When the parties met in Houston to finalize the stock purchase agreement, appellee had in his possession a 1981 brown Suburban.

Neessen testified that, during the November meeting in Houston, Barron agreed that the Suburban described in the agreement would be a 1982 model, provided mud/snow tires were installed and the glass tinted. The trade would save Neessen three thousand dollars in depreciation.

Barron denied agreeing in Houston to any such swap. Barron testified that he agreed on December 3, 1981 to an exchange to take place the next day at the office of his attorney. He testified that he did so reluctantly, out of fear that Neessen would harass his family or endanger their safety.

As opposed to Barron's testimony of an agreement on December 3rd to trade on the 4th, Neessen testified that Barron's attorney agreed on December 2nd to an exchange on the 3rd. Suffice to say the exchange never took place, and, about 1:30 in the afternoon of December 4th Barron left for Ithaca, New York in the brown Suburban.

Neessen testified that he made repeated phone calls on December 3rd to Barron's attorney in an attempt to effectuate the trade, but was repeatedly told the attorney was "tied up in a meeting." He testified that, when he finally talked to Barron's attorney about 3:00 in the afternoon, he was told that the deal was supposed to have occurred that morning and Barron was gone. We are unable to reconcile this testimony with that of Barron that he waited around at his attorney's office on the 4th trying unsuccessfully to contact Neessen, who was "out."

Plaintiff's exhibit six, a police report prepared by the Corpus Christi Police Department, reflects that, at 10:00 a.m. on December 4, 1981, Belinda Pierce, an employee of Vista Chevrolet, Inc., reported to the department that the 1981 Suburban had been stolen.

In the light most favorable to the verdict, there is evidence to support a conclusion by the jury that Barron was waiting at his attorney's office at 9:30 a.m. on December 4, the day we must accept as the day for the exchange and that, while Barron was there waiting to fulfill his end of the bargain, Vista Chevrolet's employee was on the phone to the police reporting him as a car thief.

In its brief, appellee stresses the testimony of Neessen wherein he admitted that he was "very teed off" and stated, "Just re-

port the son-of-a-bitch is stolen." This remark described the van, not the driver; however, Barron also testified that Neessen called him, demanding return of the 1981 brown Suburban, and became very abusive over the telephone.

■ Barron relied upon this evidence to show malice, and such evidence supports a finding not only of malice as required by our holding, but also of actual malice, i.e., that Vista Chevrolet reported Barron as a car thief when it knew Barron had permission to use a Suburban for a year.

We overrule appellant's first point of error alleging there is no evidence or insufficient evidence of actual malice.

In points of error three and four, appellant complains of special issue no. 21. Appellant alleges the issue allowed the jury to consider elements of injury unsupported by the evidence and that the issue allowed the jury to consider elements of injury not recoverable as a matter of law.

Special issue no. 21 was submitted to the jury and answered as follows:

ISSUE NO. __21__

What sum of money, if any, if paid in cash, do you find from a preponderance of the evidence, would fairly and reasonably compensate Reginald I. Barron for his injury, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

ANSWER: $ __500,000.00__ .

You are instructed that in answering Issue No. __21__, you may consider the following elements of injury, and none other in arriving at a monetary answer:

   1. Loss of time;

   2. Injury to feelings, reputation, character, and health;

   3. Mental suffering;

   4. General impairment of social and mercantile standing;

   5. Actual loss and injury to property, interest and credit;

   6. Decrease in earning capacity;

   7. Losses sustained in business.

■ Concerning each of the seven elements that the jury was instructed it could consider, we have reviewed the record and, with the exception of the first element, we find the evidence sufficient to support the verdict. There was 2) evidence of wounded pride and hurt that appellee, who considered himself a good Christian, should be unjustly accused of this crime; 3) evidence of inner turmoil that manifested itself in eruptions on appellee's skin and withdrawal from his family; 4) evidence appellee was avoided by his neighbors and treated very coolly by the local Chevrolet dealer after the police had the Suburban towed from his home; 5) evidence of expense involved in recovering the Suburban from impoundment by the police and loss of its use; and 6 & 7) evidence that Barron was unable to buy into another dealership and continue his chosen profession.

In its brief, appellant constructs an involved constitutional argument and contends that United States Supreme Court decisions have eliminated presumed damages. Even if this is so, the argument misses the point; with the exception of the first element, there was actual proof of each element submitted. Given the evidence, the doctrine of presumed damages is inapplicable to the facts of this case. It is unnecessary to make any presumptions to support the verdict; it is fully supported by the evidence.

■ Concerning loss of time, we can find no evidence to support the verdict for this element of recovery. Loss of time is composed of two elements; rate times time. Although Barron and his wife testified to the amount of time involved, there is no evidence of the value of that time. Barron did testify that he was earning between three and five thousand dollars a month as an employee of Vista, but this amount included a commission on every car sold and reflected compensation for his skill and expertise as a car dealer; the record is devoid of any evidence reflecting the value of appellee's time as a student or the value of a period of his life in general. As stated in

*International & G.N.R. v. Simcock,* 17 S.W. 47 (Tex.1891):

> We have scrutinzed the record, and, while we find evidence showing loss of time in a vague and an indefinite manner, we fail to detect any evidence whatever of the value of the time lost, or of any amount whatever of damages incident thereto.... The rule is that, even where the law implies damages such as necessarily result from a wrongful act complained of, proof is required to show the extent and amount of damages.

We, therefore, sustain only that part of appellant's third point of error complaining there is no evidence to support an award for loss of time.

■ Because the jury returned a verdict for a single sum, the judgment must be reversed, for we are unable to definitely and accurately ascertain what portion of the verdict reflected lost time. *Texas Employers' Insurance Association v. Lightfoot,* 139 Tex. 304, 162 S.W.2d 929, 930–31 (1942); *International & G.N.R.,* 17 S.W. at 47; *see Rubner v. Kennedy,* 417 S.W.2d 860, 864 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.).

In disposing of appellant's third point of error, we assumed loss of time was a compensable element of recovery and looked to the evidence to support an award for this element. By its fourth point of error, appellant complains that the jury was allowed to consider elements that are not legally recoverable.

We have reviewed appellant's combined argument under points of error three and four and find that the only element appellant alleges as not legally recoverable is "loss of time." No authority is cited for the proposition loss of time is not recoverable in a slander case. Appellee's brief is no more helpful, alleging that loss of time is an element of general damage and, as such, does not require proof. We reject appellee's argument for the reasons stated in *International & Great Northern Railroad,* 17 S.W. 47.

■ Damages recoverable in a slander suit include compensation for injuries to character or reputation, injuries to feelings, mental anguish and other like wrongs and injuries incapable of money valuation. *West Texas Utilities Co. v. Wills,* 164 S.W.2d 405, 412 (Tex.Civ.App.—Austin 1942, no writ); *see also Wherry,* 548 S.W.2d at 753 (discussing general and special damages). These are referred to as general damages.

Special damages may also be recovered in a slander suit. When items of special damage are claimed, they must be specifically stated, TEX.R.CIV.P. 56, and proved. In *Combined American Insurance Co. v. Morgan,* 214 S.W.2d 145 (Tex.Civ.App.—El Paso 1948, no writ), the court wrote,

> "Loss of time as used in connection with damages recoverable for personal injuries means loss of earnings."

We believe the injuries flowing from slander are to the person, and find this definition valid in a slander action. In *Wherry,* the court wrote that damages for loss of employment are regarded as special damages and are recoverable where the loss was caused directly by the publication and circulation of the libel complained of. 548 S.W.2d at 753.

■ We conclude that "loss of time" is recoverable as a special damage in a cause of action for slander when submitted with proper instructions to inform the jury that loss of time means loss of earnings. However in the instant case, that was not done—loss of time was submitted as an abstract concept with no explanatory or limiting instructions.

We believe that it was error to submit such an amorphous concept and hold that damages for loss of time in and of itself are not recoverable. Loss of time must be related to some compensable element.

We recognize the distinction between decrease in earning capacity and loss of earnings. Depending upon the facts of a given case, either might be permanent or temporary and one does not necessarily include or exclude the other. Thus, in a proper

case with proper instructions, submission of both would not be duplicitous.

In this case, the defect in the charge was pointed out to the court. Counsel for Vista Chevrolet objected as follows:

> Secondly, there is no way or no instruction by the Court as to what the Court is talking about in terms of loss of time. Loss of time from the job to come down and participate in a lawsuit is not compensable. Mr. Barron's only testimony in the trial is that he has taken away from—he has lost time because he has had to come down here and do it through this proceeding. He chose to file the lawsuit and it's his burden of proof, but loss of time is something that has no basis upon which the jury can put a figure or can look at the evidence. I mean, they are just left to run at their will and speculate as to what in the world the Court is talking about in terms of loss of time.
>
> Loss of time as defined in law of torts is not compensable unless it is shown that it was loss of time from a specific job or loss of time which resulted in a specific loss of money. Loss of time just as written here is totally speculative. The Court gives the jury no instructions and there is no evidence in the record as to any loss of time which is compensable and there is further no evidence in the record as to a monetary amount of value to be placed upon loss of time.

In the face of such an objection, the court erred in submitting "loss of time" standing alone. Appellant's fourth point of error is sustained to the extent it complains of the manner in which loss of time was submitted in this case.

By its fifth point of error, appellant complains of the admission of testimony from Mrs. Barron. Appellant alleges none of the evidence had any conceivable relevance to any issue in the case.

In *Pittman v. Baladez*, 158 Tex. 372, 312 S.W.2d 210 (1958), the Supreme Court stated the test for relevance: "There must be some logical connection, either directly or by inference, between the fact offered and

the fact to be proved, to make the former circumstance relevant to the latter." *Id.* 312 S.W.2d at 216.

■ In the instant case, facts to be proved included the mental anguish of Barron and the effects of the slander on his mental and physical well-being. We have reviewed Mrs. Barron's testimony and agree with appellee that her testimony was relevant to show her husband suffered emotionally and physically after the slander and, additionally, we feel that the effects of the slander on appellee's family relationship are relevant to the general setting of the plaintiff's emotional and physical state.

Appellant also alleges Mrs. Barron's testimony was grossly prejudicial and incompetent. We agree that portions of her testimony were improper; however, the question whether the improper evidence probably influenced the verdict unfavorably to appellant is to be determined as a matter of our judgment in the light of the record as a whole. *Id.*

■ In that the trial court sustained several objections to Mrs. Barron's testimony and also instructed the jury to disregard other portions, we cannot say the evidence was reasonably calculated to and probably did cause the rendition of an improper judgment. *Id.* Although, at one point, defense counsel requested a mistrial, there was no ruling on the underlying objection, no request for the jury to be instructed to disregard the testimony, and no ruling on the motion for mistrial. In light of the entire record, we overrule appellant's fifth point of error.

Appellant's sixth point of error is a complaint the trial court erred in admitting testimony from Reginald Barron and his wife concerning alleged physical injuries. At trial, the court permitted testimony concerning the existence, but not the cause, of appellee's physical problems. Appellant alleges this evidence was inadmissible because it was not supported by any medical testimony of causation. Appellant cites no authority in this point of error for its posi-

tion. In *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729 (Tex.1984), discussing the need for expert medical testimony, the Supreme Court wrote:

> Lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition. Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation.

*Id.* at 733.

■ We believe that, by the use of common sense and general experience, the jury could conclude that appellee's acne, anxiousness and other problems were the result of duress arising from the slander. Appellant's sixth point of error is overruled.

Appellant's seventh point of error alleges the verdict is so excessive that it could only have been based on passion or prejudice and not the evidence. Appellant concludes that it is therefore entitled to a new trial. No motion for remittitur appears in the transcript, and no point of error requests a remittitur.

In *Southern Pacific Transportation Co. v. Peralez*, 546 S.W.2d 88 (Tex.Civ.App.— Corpus Christi 1976, writ ref'd n.r.e.), we set out the test for determining whether a verdict is excessive:

> In determining if a verdict is excessive, the court must review only that evidence favorable to the verdict and the jury's determination will not be disturbed as excessive where there is any evidence to sustain it. There must be some proof, circumstantial or direct, of bias or prejudice and in the absence of such proof, this Court is required to give every inference to the evidence in favor of the verdict.

*Id.* at 97–98.

■ In the instant case, there was evidence that appellee's reputation was dam-

aged, that appellee suffered mental anguish, that appellee suffered physical damage, that appellee was deprived of the use of the vehicle in question and that appellee has been unable to secure participation in another dealership. This evidence supports the verdict, and we do not believe that the amount of the verdict is, in and of itself, evidence of passion or prejudice. Appellant's seventh point of error is therefore overruled.

In that we have sustained appellant's third and fourth points of error, the judgment of the trial court is REVERSED, and the cause is REMANDED for retrial in accordance with this opinion.