Blair Keth PESHAK, Individually and
d/b/a Easterwood Avionics,
Appellant,

v.

Edward C. GREER, Appellee.

No. 13–97–523–CV.

Court of Appeals of Texas,
Corpus Christi.

Jan. 6, 2000.

John W. Pleuthner, Law Office of John W. Pleuthner, P.C., Austin, Joseph D. Jackson, Round Rock, for appellant.

Kevin B. Miller, Miller & Henderson, San Antonio, John M. Henderson, San Antonio, for appellee.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ.

## OPINION

DORSEY, Justice.

This controversy arose from an inspection of Blair Peshak's airplane by Edward Greer and two other inspectors with the Federal Aviation Administration. Peshak later wrote at least two letters complaining that Greer had broken into his airplane. Greer sued Peshak for defamation and malicious prosecution and Peshak counterclaimed for damages for the alleged trespass to the aircraft. Greer recovered substantial damages, including exemplary damages, and Peshak took nothing on his counterclaim. Peshak ap-

peals bringing eleven points of error. We find no error in the award of actual damages, but because we must reverse the award of punitive damages, we reverse and remand the entire cause for a new trial.

Peshak owns and operates his own airplane, a single-engine Cessna 150, which he maintained at the Georgetown Airport, Williamson County, Texas. In 1994, he applied for a Category II certification for his aircraft that would permit him to operate it at lower altitudes in limited visibility than that allowed pilots and planes certified in other categories. Part of the certification process requires the airplane's inspection by a Federal Aviation Administration (FAA) team. In April 1994, the FAA dispatched a three-man team to perform the certification inspection. The team consisted of appellee Greer, Jerry Virden, and David Wagner. Each specialized in a different part of the inspection. Greer had inspected Peshak's Cessna four years earlier and had noted a number of radical modifications to the flight controls, which caused him to question its airworthiness.

Peshak understood from conversations with FAA representative Charlie Taylor, that an FAA representative would meet him at his home to help him fill out the paperwork. He believed that the physical inspection of his aircraft would take place after the paperwork had been completed and submitted. On April 12, 1994, Wagner, a member of the inspection team, left messages on Peshak's answering machine saying that he would meet Peshak "in Georgetown" the next day at approximately 10:30 a.m. Peshak understood this to mean that Wagner would come to his home to discuss the CAT II application. In fact, Greer, Virden, and Wagner went directly to the Georgetown airport intending to perform the physical inspection of the airplane.

The inspectors were unable to locate Peshak when they arrived at the airfield. After asking the airport manager if he was

there, the inspectors walked to the Cessna bearing the identification number given them by Peshak. The inspectors walked around the plane for several minutes waiting for Peshak. Virden returned to the main building to arrange for a room in which to conduct Peshak's interview, should he arrive. Shortly after Virden left, Wagner decided to go inside, too, leaving Greer alone at the plane. As Wagner was walking to the building, Peshak arrived and drove directly to the plane. Peshak demanded Greer's identification and upon Wagner's return, his too. Peshak complained he had been waiting for the inspectors at his home. Wagner told him that inspections generally take place at the airport, that they needed to see the aircraft, and that if he had wanted to meet Peshak at home, he would have asked him for directions. Virden rejoined the group during this conversation. Wagner suggested they retire inside to continue the discussion and begin the certification interview. Peshak agreed, telling the team he first needed to put something in the airplane.

The inspectors returned to the building and waited. When Peshak failed to appear after awhile, they went outside and found that he had left the airport. They discovered Peshak had installed shades over the plane's windows to block their view of the interior. They photographed the exterior of the plane, took statements from two airport employees, and contacted the FAA supervisor in San Antonio who instructed them to return to their office. The inspectors were at the airport for less than two hours.

The FAA attempted a subsequent inspection of Peshak's airplane several months later, but Peshak denied them access. On that basis, his CAT II application was denied.

Peshak wrote to the FAA on May, 9, 1994, and made the following statement: " ... I am looking for an answer as to why, on April 13, 1994, at approximately

10:30 AM was Edward C. Greer, an Aviation Safety Inspector with this FSDO, observed forcibly breaking into this aircraft, while locked and secured to its assigned and tieddown location at the Georgetown city airport. . . . "

He sent a second letter to the Chief of Police of Georgetown in which he said he saw Ed Greer inside his aircraft and that the lock had been broken. He stated in the letter that a complete description of his complaints had been mailed to Greer's superior at the FAA, and if no action was taken, the FBI and the U.S. Justice Department would be involved. The FAA conducted an investigation of Peshak's complaints, but concluded they were groundless.

Appellee Greer filed suit for defamation and malicious prosecution, although no issue on malicious prosecution was submitted. Appellant Peshak counterclaimed for damage to his aircraft. The jury returned a verdict in favor of Appellee, that included punitive damages, and did not reach Appellant's claim of damage to his property. A judgment was entered accordingly.

■ Appellant Peshak complains in his first three points of error that the trial court erred in failing to find that Greer was a public official when Peshak made his statements. Appellant argues that such status would require Greer to prove that Peshak made the statements with actual malice as defined and mandated in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), in order to recover in a defamation action. *See also Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989).

However, appellant never raised the issue in the trial court by pleading, motion, objection to the charge, or otherwise. Nothing is presented for review. TEX. R.APP. P. 33.1 (a). Appellant's points of error one, two, three and four are overruled.

■ By his fifth point of error, Peshak challenges the admission of hearsay. Spe-

cifically, Peshak challenges the admission of the following testimony from Greer on direct examination:

Q. After the FAA investigation, were you advised of the findings of the investigation?

A. Yes. It was found that Mr. Peshak's allegations lacked no merit [sic].

Counsel: I'm going to object, Your Honor. That calls for hearsay on the witness'[s] part as to what the investigator concluded.

Court: Overruled.

However, moments later the following exchange occurred after a brief discussion at the bench:

Q. I want to know what you became aware of pursuant to the FAA investigation concerning the allegations against you?

A. That the case had no merit.

Q. I'm talking about the allegations that Mr. Peshak made about you or to you—toward you.

A. I was told—

Counsel: I'm going to object, Your Honor, as to what he was told. It's hearsay.

Court: Sustained.

This testimony was the same that counsel objected to and the trial court admitted in the first instance. The trial court evidently reconsidered its first ruling and corrected it by the second. However, there was no motion to have the jury disregard the testimony.

The trial court did as appellant asked: it sustained his objection. No other relief was requested of the court. Appellant cannot complain that the court erred in not giving more relief than he sought. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 907 S.W.2d 535, 564 (Tex.App.—Corpus Christi 1994) *rev'd on other grounds*, 953 S.W.2d 706 (Tex.1997); TEX.R.APP. P 33.1; *see also Brookshire Bros., Inc. v. Wagnon*, 979 S.W.2d 343, 354 (Tex.App.—Tyler

1998, no writ) (failure to request an instruction to disregard waives error).

Appellant failed to preserve error by failing to request an instruction for the jury to disregard the testimony. His fifth point of error is overruled.

■ By his sixth point of error, appellant contends the trial court erred by commenting on the weight of the evidence in its definition of malice in the jury charge. The offending definition states, "Malice means conduct that is specifically intended by the Defendant to cause substantial injury to the Plaintiff." Appellant complains that because both parties sought findings on malice, the definition as presented was improper as an implied instruction that only the defendant, Peshak, could commit malicious conduct and the other party, Greer, could not.

The charge presented to the jury consisted of nine questions. The first five related to Greer's claims against Peshak and the remaining four addressed Peshak's against Greer. The first question asked if the statements, if any, by appellant concerning the criminal activity of Greer were false when published. The jury answered yes, and continued to find in question two that they were defamatory. In question four the jury found that Peshak, appellant, acted "intentionally, willfully or with malice." If the jury found yes to question four, it went to question five, which inquired as to what exemplary damages, if any, should be awarded Greer. The questions that applied to Peshak's claim were not reached by the jury, because they were dependent on the jury not finding Peshak's statements about Greer's criminal activity were false. By finding Peshak's allegations against Greer false, the jury found that Greer did not break into Peshak's airplane and did not commit a trespass. Thus, the question of whether Greer trespassed with malice became moot. Whether the definition of malice could apply to Greer is not critical, because the jury did not reach the issue. Peshak's sixth point of error is overruled.

■ Peshak complains in his seventh point of error that the trial court erred by posing to the jury a question regarding malice in the disjunctive, permitting an award of exemplary damages without a finding of malice. The jury was instructed, as a predicate for punitive damages, that if it found that appellant "acted intentionally, willfully, or with malice" it could award punitive damages. Appellant argues that this improperly allowed the jury to award exemplary damages if it found Appellant's actions were willful or intentional, whereas exemplary damages for defamation are only allowed when the utterance was made with malice. We agree.

As a predicate to the award of punitive damages, the court charged the jury with the following question: "Do you find that [Appellant] acted intentionally, willfully or with malice?" If the jury answered that question affirmatively, it was allowed to set the appropriate amount of punitive damages. "Intentional" and "willful" are not defined in the charge, but "malice" is defined as "conduct that is specifically intended by the Defendant to cause substantial injury to the Plaintiff." Thus, the jury was permitted to base an award of punitive damages on defamatory conduct that was "intentional" or "willful."

Libel is defined in statute as:

A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

TEX. CIV. PRAC. & REM.CODE ANN. § 73.001(Vernon 1997).

■ No culpable mental state is required in our libel statute and none is

required for defamation generally. Corpus Juris Secundum states, "The publication of defamatory matter, actionable per se, entitles the person defamed to compensation for the actual injury done him without regard to the motive with which the publication was made and want of actual intent to injure or defame furnishes no legal excuse." 53 C.J.S. *Libel & Slander* § 43 (1987). Proof of the publication of the false injurious statement is sufficient without any necessity of showing a particular mental state, for one is assumed to intend to make the statement that issues from his mouth or pen.

■■■ In both libel and slander the issues are whether the utterance was made, if it was false, if it damaged the complainant and if the speaker had any privilege. RESTATEMENT (SECOND) OF TORTS § 558 (1977); *c.f.Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 921 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.). Whether the defendant intended to say or print the defamatory words is not an element of the cause of action unless privilege is involved. *See Express Pub. Co. v. Lancaster*, 2 S.W.2d 833, 834 (Tex.Comm.App. 1928) (holding defamation defendant is liable irrespective of his innocent motives in publishing the defamatory statement); *Hornby v. Hunter*, 385 S.W.2d 473, 476 (Tex.Civ.App.—Corpus Christi 1964, no writ) (holding that even innocent, mistaken publication still subjects defamer to liability); 50 TEX. JUR. 3d *Libel & Slander*, § 12, at 33 (1986) (noting that intent is not an element of defamation). We assume the words were intended because they were used. When the jury found Peshak defamed Greer and what he said was false, it found by inference that he intended to write the letters found to be defamatory.

■■■ The issue is whether exemplary damages may be awarded if the defamatory statement is made intentionally or will-

fully. Punitive damages are available in defamation cases based upon the same rules governing punitive damage awards for all torts. *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 903 n. 1 (Tex.1985). The supreme court has held that a plaintiff must prove the statements were made maliciously to justify exemplary damages in a defamation case. *See Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex.1984). Civil Practice and Remedies Code section 41.003 provides that exemplary damages may only be awarded if the claimant proves by clear and convincing evidence that the harm resulted from fraud or malice. See TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a) (Vernon 1997).[1]

■■■ We hold that exemplary damages in a defamation case between private litigants that does not involve privilege can only be supported if the utterance was made with malice. That the statements were made willfully or intentionally will not justify exemplary damages.

This case does not involve a media defendant. The rule of *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), requiring fault in a defamation action against a publisher or broadcaster for a defamatory statement about a private individual, is not applicable. *See WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998).

The instruction allowed the jury to find appellant liable for exemplary damages if it found he acted intentionally, willfully, or maliciously. By law only his acting with malice raises his conduct to that type of egregiousness that justifies punitive damages in a defamation action. The instruction was defective and we conclude it probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1(a)(1). We sustain appellant's seventh point of error

1. Because the cause of action at issue in this case accrued prior to September 1, 1995, the predecessor statute applies. Act effective Sept. 2, 1987, 70th Leg., 1st C.S., ch. 2, § 2.12, 1987 Tex.Gen. Laws 44 (amended by Act effective Sept. 1, 1995) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(5) (Vernon Supp.1997)).

and reverse the award of punitive damages. We do not consider appellant's other challenges to punitive damages in his ninth and tenth points of error. TEX. R.APP. P. 47.1.

In his eighth point of error, Peshak challenges the legal and factual sufficiency of the evidence to support the actual damages awarded by the jury.

The jury awarded appellee $15,000 for past mental anguish, $1,500 for future mental anguish, $40,000 for past injury to reputation, $15,000 for future injury to reputation, and $32,000 for loss of future earning capacity.

 Compensatory damages allowable for defamation are divided into two categories: general and special. General damages are mental anguish, injury to the reputation and the like that naturally flow from the libel and are not easily susceptible to monetary valuation. *West Texas Utilities Co. v. Wills,* 164 S.W.2d 405, 412 (Tex.Civ.App.—Austin 1942, no writ); *Evans v. McKay,* 212 S.W. 680, 685 (Tex.Civ. App.—Dallas 1919, writ dism'd); *see also Leyendecker,* 683 S.W.2d at 374.

 In actions of libel *per se,* the law presumes the existence of some actual damages, requiring no independent proof of general damages. *See Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 922 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.); *Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 488 (Tex. App.—Corpus Christi 1989, writ denied); *City of Brownsville v. Pena,* 716 S.W.2d 677, 682 (Tex.App.—Corpus Christi 1986, no writ); *First State Bank v. Ake,* 606 S.W.2d 696, 702 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). The amount of general damages is very difficult to determine, and the jury is given wide discretion in its estimation of them. *Evans,* 212 S.W. at 685; *Wills,* 164 S.W.2d at 412.

We sustain the general damages of injury to reputation and mental anguish given the wide discretion the jury has in determining those damages.

 Lost earning capacity is a form of special damages, *Missouri Pac. Ry. Co. v. Richmond,* 73 Tex. 568, 11 S.W. 555, 558 (1889); *Houston Belt & Terminal Ry. Co. v. Wherry,* 548 S.W.2d at 743, 753 (Tex. Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.), and must be specifically stated and proved. *Kelly v. Diocese of Corpus Christi,* 832 S.W.2d 88, 91 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.); *Vista Chevrolet, Inc. v. Barron,* 698 S.W.2d 435, 441 (Tex.App.—Corpus Christi 1985, no writ). Although the amount of damages for lost earning capacity is largely within the discretion of the jury, *Fowler v. Pedlar,* 497 S.W.2d 399, 401 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ), the plaintiff is required to prove his lost earning capacity "with that degree of certainty to which the case is susceptible...." *McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710, 712 (1943).

After reviewing the evidence under the proper standards, we find no error. Greer testified that he had worked hard all his life, and had been in aviation since 1957. He stated his current salary was $62,000 as the most senior maintenance inspector at his pay grade, GS–13. He testified he had applied for a promotion to the position of Air Carrier Administrator, but that he had not received the job. The rate of pay for that job was $86,000 per year, plus expenses.

Greer claimed the number of investigations an FAA inspector is subjected to is a factor considered in promotions. Greer testified he was accepted by the IKO, an international FAA counterpart, for the promotion, but that the job went to another. The rejection came some two years after Peshak's complaints. Despite the defamatory remarks, Greer admitted he had received cash bonuses every year and outstanding or exceptional job evaluations following Peshak's allegations. Greer's witnesses each testified to Greer's good reputation in his industry.

The jury awarded Greer no lost past earnings and $32,000 for loss of future earnings. The evidence was ample to support the verdict both legally and factually. Peshak's eighth point of error is overruled.

The question now becomes whether partial remand is proper when we have affirmed the actual damage award but reversed the punitive damage award. Texas Rule of Appellate Procedure 44.1(b) allows remand for partial new trial only if the part affected by error is separable without unfairness to the parties. Because we do not believe the issues of malice, which would support a finding of punitive damages, and liability for defamation can be separated without unfairness to the parties, we remand this entire cause for new trial. Because we reverse and remand the entire cause for new trial, we do not reach Peshak's final point of error related to cumulative error.

We have held that a showing of malice is required to support punitive damages in this case. To answer the question of whether Peshak acted with malice in defaming Greer, a jury must assess his state of mind. It would be unfair to have a trial for the sole purpose of determining his state of mind. *See Ford Motor Co. v. Miles*, 967 S.W.2d 377, 390 (Tex.1998) (Gonzales, J., concurring) (stating that issues of negligence and gross negligence are so inextricably intertwined that new trial cannot be fairly had upon sole issue of gross negligence for purposes of punitive damages); *see also Green Tree Financial Corp. v. Garcia*, 988 S.W.2d 776, 785 (Tex. App.—San Antonio 1999, no pet.) (remanding entire case when affirming actual damage award but reversing punitive damage award because the jury on remand needed to consider all the evidence in order to determine whether the actions giving rise to liability also support imposition of punitive damages); *but see Sturges v. Wal–Mart Stores, Inc.*, No. 09–96–315–CV (Tex. App.—Beaumont July 30, 1998, pet. granted November 12, 1999) (not designated for publication), 1998 WL 428864, at *10 (af-

firming award of actual damages and remanding for new trial on sole issue of punitive damages). Accordingly, we reverse the trial court's judgment and remand this cause for new trial, unless plaintiff wishes to make voluntary remittitur of the punitive damages award pursuant to Texas Rule of Appellate Procedure 46.5. If remittitur is timely filed, this court will affirm the trial court's judgment in accordance with the remittitur.