COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-229-CV

 

 

VIRGIL BINGHAM                                                                APPELLANT

 

                                                   V.

 

SOUTHWESTERN BELL YELLOW                                             APPELLEES

PAGES,
INC. AND STEPHEN BROWN

 

                                              ------------

 

           FROM
THE 236TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                   MEMORANDUM
OPINION[1] ON
REHEARING

 

                                              ------------

On Appellant=s motion for rehearing, we withdraw our opinion and judgment of
September 20, 2007, and substitute the following.  Our ultimate conclusions remain unchanged.








                                          I.  Introduction

In this defamation case,
Appellant Virgil Bingham appeals from the trial court=s grant of summary judgment in favor of Appellees Southwestern Bell
Yellow Pages, Inc. (ASWBYPS@) and Stephen Brown.  In his
sole appellate issue, Appellant contends that the trial court erred in granting
Appellees= motion.[2]  We affirm.

                          II. 
Factual and Procedural Background

Appellant was a long-time
employee of SWBYPS who worked under Brown as a Senior Account Representative in
the company=s Fort Worth
sales office.  On January 15, 2004, Brown
suspended Appellant pending the outcome of an internal investigation into
allegations concerning Appellant=s mishandling of customer advertising accounts.  At the conclusion of the investigation, Brown
summoned Appellant back to work and demoted him to a lesser sales position.[3]









Appellant responded by filing
the underlying suit against Appellees, alleging slander and slander per se
after learning of two meetings that Brown held with Vicki Rowland and Bryan
Burkhart, two of Appellant=s coworkers,[4]
during his suspension period.  Appellant
claimed that, in those meetings, Brown slandered him by comparing his alleged
misconduct to that of a former employee (AHolleyhead@) who had
been terminated for forging customers= signatures on advertising contracts. 
Appellant also alleged that during the course of those meetings Brown
showed Rowland and Burkhart some of the forged contracts contained in the
former employee=s file and
insinuated that Appellant was also a forger and a thief and that he could not
be trusted.  

Appellees filed a traditional
motion for summary judgment with respect to all of Appellant=s claims; Appellant filed a timely response with evidence of his
own.  In the motion, Appellees asserted
that (1) any statements made by Brown during the course of his meetings with
Rowland and Burkhart are not capable of having a defamatory meaning, (2) Brown=s alleged statements are covered by a qualified privilege, and (3)
Appellant=s claim for
damages must fail as a matter of law.








The parties filed evidence recounting
the alleged defamatory statements from the perspective of Brown, Rowland, and
Burkhart.  Brown described the events
that transpired during the course of his meeting with Rowland as follows:

[Rowland] came to my office
and was visibly upset.  I sensed she was
concerned about her job in light of [Appellant=s] suspension.  In an effort to
comfort Ms. Rowland, I explained to her that she did not need to be concerned
about her job because SWBYPS does not make employment decisions
flippantly.  In an effort to convey to
her the lengths SWBYPS goes to before making an employment decision, I referred
her to a voluminous investigative file on my credenza related to an employee
who had been previously terminated.  I
believed that the thickness of the this file would convey to Ms. Rowland the
type of investigation SWBYPS conducts prior to making employment decisions. 

In her deposition, Rowland
testified that Brown did not say that Appellant 
had engaged in conduct similar to that of Holleyhead.  In her summary judgment affidavit, Rowland
averred that Brown began discussing Appellant=s suspension, then walked over to a file cabinet and retrieved a large
manila envelope from on top of the cabinet. 
Brown removed several documents and proceeded to show her that customers= signatures had been forged on SWBYPS contracts. She asked Brown if
the papers were Appellant=s, and Brown
said no, they were Holleyhead=s.  She averred that she Aimmediately thought to myself that [Brown] was comparing the
[Holleyhead] forgeries with why he suspended [Appellant].@ 








With respect to his meeting
with Burkhart, Brown averred:

On or
about the next workday following my conversation with Ms. Rowland, Bryan
Burkhart came to my office to discuss [Appellant=s]
suspension.  At the time of the
conversation, I understood that I was talking to Mr. Burkhart in his capacity
as Union Steward.  As with Ms. Rowland, I
explained to Mr. Burkhart that SWBYPS does not make employment decisions
flippantly.  

 

Burkhart testified that
during a twenty to thirty-minute Ainformal@ meeting
with Brown,

[W]e
discussed things that reps had done in the past that were against company
policy that had caused some people a lot of years of service to no longer work
for the company, you know, that [Appellant] had a lot of years.

 

And then he showed me where this [Holleyhead] had
had a lot of years.  And he proceeded to
show me basically from a distance what she had done in some sort of forgery, a
way of running forgery off a copying machine that cost -- ultimately cost her
her job.

 

. . . .

 

He was showing me -- I didn=t
really pay that much attention because he was doing some sort of acetate.  He did come over to the other side of the
desk, the side of the desk I was on, with the information and did some sort of
acetate thing showing me something on signatures. . . .       

 

I really felt like that at that point that he
was, I don=t
know, maybe preparing for what maybe was going to happen to [Appellant]. 

 

                                    III.  Standard of Review    








In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.

When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).








A defendant who conclusively
negates at least one essential element of the plaintiff=s cause of action is entitled to summary judgment on that claim.  IHS Cedars Treatment Ctr. of Desoto, Tex.,
Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
plaintiff to come forward with competent controverting evidence raising a
genuine issue of material fact with regard to the element challenged by the
defendant.  Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995). 
When, as in this case, a trial court grants the defendant=s motion without specifying the ground upon which it based its ruling,
the summary judgment will be affirmed if any of the theories advanced are
meritorious.  Carr v. Brasher, 776
S.W.2d 567, 569 (Tex. 1989).

                                  IV.  Discussion

A.     Appellant=s Claim for Damages

Appellees argue that summary
judgment was proper in this case because, as a matter of law, Appellant
suffered no damages as a result of Brown allegedly defaming him.  Appellant counters by arguing, as he did in
his response in the trial court, that damages are presumed in slander per se
cases. 

1.     Slander Per Se
Claim








A defamatory oral
statement may be slander per se, that is in and of itself, or slander per
quod.  Minyard Food Stores, Inc. v.
Goodman, 50 S.W.3d 131, 140 (Tex. App.CFort Worth 2001), rev=d on other grounds,
80 S.W.3d 573 (Tex. 2002).  If a
statement is slanderous per se, no independent proof of damage to the plaintiff=s reputation or of mental anguish is required, as the
slander itself gives rise to a presumption of general damages.[5]  Bentley v. Bunton, 94 S.W.3d 561, 604
(Tex. 2002); Mustang Athletic Corp. v. Monroe, 137 S.W.3d 336, 339 (Tex.
App.CBeaumont 2004, no pet.) (citing Leyendecker &
Assocs., Inc. v. Wechter, 683 S.W.2d 369, 374 (Tex. 1984) (op. on reh=g)).  However, if
the statement constitutes slander per quod, the plaintiff must plead and
present proof of special damages in order for the alleged defamation to be
actionable.  Kelly v. Diocese of
Corpus Christi, 832 S.W.2d 88, 94 (Tex. App.CCorpus Christi 1992, writ dism=d w.o.j.); Stearns v. McManis, 543 S.W.2d 659, 662
(Tex. Civ. App.CHouston [1st Dist.] 1976, writ dism=d); see Minyard Food Stores, Inc., 50 S.W.3d at
140.








Statements are
slanderous per se if they are so obviously harmful to the person aggrieved that
no proof of their injurious effect is necessary to make them actionable.  Shearson Lehman Hutton, Inc. v. Tucker,
806 S.W.2d 914, 921 (Tex. App.CCorpus Christi 1991, writ dism=d w.o.j.).  Matters
characterized as slanderous per se are statements that impute the commission of
a crime or cause injury to a person=s office, business, profession, or calling.  Minyard Food Stores, Inc., 50 S.W.3d
at 140.  Here, Appellant claims that Brown labeled him a forger in
the eyes of his coworkers, Rowland and Burkhart, by implicitly comparing his
alleged misconduct with that of Holleyhead. 
Thus, Appellant argues that Brown=s statements, coupled with his conduct during the meeting,
were slanderous per se as they Aimput[ed] unethical and criminal actions . . . [to
Appellant], and did injure [him] in his occupation.@  We disagree.








Whether language
is capable of having a defamatory meaning is a question of law for the trial
court.  Musser v. Smith Protective
Serv., Inc., 723 S.W.2d 653, 655 (Tex. 1987).  In determining this question, the court
construes the statement as a whole in light of surrounding circumstances based
upon how a person of ordinary intelligence would perceive the entire
statement.  Id. at 654‑55.  If the statement, seen in this light, has but
one clear and obvious meaning, then no further inquiry is necessary.  Gray v. HEB Food Store No. 4., 941
S.W.2d 327, 329 (Tex. App.CCorpus Christi 1997, writ denied) (AIf a statement unambiguously and falsely imputes criminal
conduct to plaintiff, it is defamatory per se.@).  However, if the
statement is ambiguous, or if the full effect of the statement cannot be
understood without the use of extrinsic evidence, then the trial court must go
beyond the snapshot of time in which the statement was published and consider
innuendo.  Moore v. Waldrop, 166
S.W.3d 380, 386 (Tex. App.CWaco 2005, no pet.).[6]  An innuendo may be used to explain but not to
extend the effect and meaning of the language asserted to be actionable.  Simmons v. Ware, 920 S.W.2d 438, 451
(Tex. App.CAmarillo 1996, no writ). 
In some cases, the consideration of innuendo and extrinsic evidence is
the only way to know whether a statement is slanderous.  Moore, 166 S.W.3d at 386.  








The test for
actionable innuendo is not what construction a plaintiff might place upon the
statements, but rather, how the statement would be construed by the average
reasonable person or the general public. 
Simmons, 920 S.W.2d at 451; Arant v. Jaffe, 436 S.W.2d
169, 176 (Tex. Civ. App.CDallas 1968, no writ).  Again, it is the court=s duty to determine if the statements at issue are, in
their natural meaning, capable of the defamatory interpretation ascribed to
them by the innuendo.  Simmons, 920
S.W.2d at 451.  However, as explained by
the Waco Court of Appeals, Aonce innuendo is being considered, the statement has moved
beyond the analysis of slander per se and into that of slander per
quod, because . . . [t]he very definition of >per se,= >in and of itself,= precludes the use of innuendo.  If the statement, taken by itself and as
a whole, is per se slanderous, it will require no extrinsic evidence to clarify
its meaning.@  Moore, 166
S.W.3d at 386.

In this case,
Appellant has not identified the specific words he contends are defamatory per
se.  But it is clear from Rowland=s and Burkhart=s testimony that Brown did not explicitly say that
Appellant was a thief, that he was a forger, or even that Appellant had done
something similar to what Holleyhead had done. 
Instead, Appellant relies on Rowland=s and Burkhart=s testimony about what they inferred from Brown
showing them forgeries from Holleyhead=s file after or while discussing Appellant, namely, that
Appellant had forged signatures like Holleyhead had.  

This is a prime
example of innuendo.  Brown did not say
anything that was itself defamatory. 
Instead, Appellant relies on extrinsic evidenceCwhat Brown showed to Rowland and Burkhart, and what they
inferredCto show that Brown=s words, when considered in light of his actions, had a
defamatory meaning not immediately clear to the average reasonable person or
the general public.








Appellant
contends that Brown Amade it clear@ to Rowland and Burkhart that the former employee=s Aconduct should be compared in mirror-image fashion@ with the misconduct for which Appellant had been
suspended.  In support of his position,
Appellant points to Rowland=s deposition in which she stated that after being shown
the former employee=s file AI immediately thought to myself that Mr. Brown was
comparing [Holleyhead=s] forgeries with why he suspended [Appellant].@  Rowland also
testified that she knew that Holleyhead had been fired for forgery and,
therefore, assumed that Brown was implying that Appellant had engaged in
similar conduct. 

However, standing
alone, Brown=s act of displaying forged contracts while discussing the
termination of a former employee did not unambiguously impute any
criminal conduct to Appellant. 
This is shown by the fact that Burkhart and Rowland each interpreted
Brown=s actions during their respective meetings
differently.  Unlike Rowland, Burkhart
testified in his deposition that he did not interpret Brown=s act of displaying the forged contracts as equating
Appellant=s alleged misconduct with that of the former
employee.  Rather, Burkhart said:

I didn=t think that he wasCI don=t think that Mr. Brown was comparing the two because they were two
separate issues of what had actually transpired and what [Appellant] was being
accused of versus what [Holleyhead] had done. 


 

. . . .

 

I [felt] like that there was a comparison being made in that this
was a serious enough offense, and that what [Holleyhead] had done, had been
terminated over, and that it was implied that [Appellant] had done this same
serious type of action, had taken severeBhad done something as wrong as she had.  

 








Additionally,
Rowland testified at her deposition that immediately after being shown
Holleyhead=s file, she asked Brown whether the forgeries contained
therein related in any way to Appellant. 
According to Rowland, Brown answered Ano.@  Rowland also
stated that Brown never expressly referred to Appellant as a thief or a forger
or said that he could not be trusted. Although Brown=s statements and conduct may constitute slander per
quod when innuendo is considered, absent such considerations, they were not per
se slanderous so as to absolve Appellant from proving special damages.  Id. at 386-87.

2.     Appellees
Conclusively Negated Special Damages

Assuming, without
deciding, that Brown=s statements and conduct during his meetings with Rowland
and Burkhart were sufficient to constitute slander per quod, we nonetheless
conclude that the trial court did not err in granting Appellees= motion for summary judgment because Appellant=s claim for damages fails as a matter of law.








In his amended
petition, Appellant pleaded and sought recovery for the following special
damages:  (1) past and future lost
earnings and (2) past and future loss of earning capacity.  Appellees countered by filing for summary
judgment challenging, among other things, Appellant=s claim for damages. 
In order to properly obtain summary judgment on this ground, Appellees
were required to conclusively negate the existence of those damages.  See Tex.
R. Civ. P. 166a(c); Tate v. Goins, Underkofler, Crawford &
Langdon, 24 S.W.3d 627, 635 (Tex. App.CDallas 2000, pet. denied). 
Here, Appellees negated Appellant=s special damage claim by producing the transcript of his
own deposition in which he admitted to being unaware of any money that he has
lost at present as a result of Brown allegedly defaming him.  Appellant testified that he anticipated a Apotential of loss of income in the future@ but stated that it was Ahard to say@ what, if any, future income would be lost.  

While uncertainty
as to the amount of damages is not fatal to recovery, lack of evidence or uncertainty
as to the fact of damages is.  See
Pace Corp. v. Jackson, 155 Tex. 179, 190, 284 S.W.2d 340, 348 (1955).  Damages must be ascertainable in some manner
other than by mere speculation or conjecture, and by reference to some fairly
definite standard, established experience, or direct inference from known
facts.  A.B.F. Freight Sys., Inc. v.
Austrian Import Serv., Inc., 798 S.W.2d 606, 615 (Tex. App.CDallas 1990, writ denied). 
Remote damages, or those damages that are purely conjectural,
speculative, or contingent, are too uncertain to be ascertained and cannot be
recovered.  See Westech Eng=g, Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 205 (Tex. App.CAustin 1992, no writ); Roberts v. U.S. Home Corp.,
694 S.W.2d 129, 135 (Tex. App.CSan Antonio 1985, no writ).     













Once Appellees
met their burden to conclusively negate the existence of Appellant=s alleged special damages, the burden shifted to Appellant
to produce competent controverting evidence in support of the damages
pleaded.  See Centeq Realty, Inc.,
899 S.W.2d at 197.  In his response to
Appellees= motion, Appellant simply argued, as he does here, that
Brown=s statements were slanderous per se and, therefore,
damages are presumed.  Despite submitting
135 pages of summary judgment evidence in support of his response, he failed to
cite the trial court to any evidence raising a genuine issue of material fact
as to whether Brown=s allegedly defamatory statements and conduct had caused
him economic or pecuniary loss.  He also
failed to address the issue in his brief or cite us to any such evidence on
appeal.  Trial and appellate courts are
not required to sift through voluminous deposition transcripts and other
summary judgment evidence in search of evidence raising a fact issue.  See Shelton v. Sargent, 144 S.W.3d
113, 120 (Tex. App.CFort Worth 2004, pet. denied).  Therefore, in the absence of any controverting
evidence, we conclude that Appellees were entitled to summary judgment on the
ground that Appellant suffered no damages as a matter of law.[7]  Because we hold that Appellees are entitled
to summary judgment on this ground, we need not address the remaining grounds
presented in their motion.  FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872-73 (Tex. 2006) (holding
where summary judgment does not specify grounds relied on, reviewing courts are
to affirm if any ground is meritorious); Ross v. Arkwright Mut. Ins. Co., 892
S.W.2d 119, 130 (Tex. App.CHouston [14th Dist.] 1994, no writ) (recognizing that
because defendant is entitled to summary judgment based on its negation of
damage element of plaintiff=s claim, it is unnecessary to consider remaining grounds
presented in the motion).  

                                          V.  Conclusion

Accordingly, we
overrule Appellant=s issue and affirm the trial court=s judgment.  

 

 

ANNE GARDNER

JUSTICE

 

PANEL A:   CAYCE, C.J.; HOLMAN and GARDNER, JJ.

 

DELIVERED:  January 17, 2008

 











[1]See Tex. R. App. P. 47.4.

 





[2]This
point is sufficient to challenge the summary judgment on all grounds upon which
it could have been granted.  See
Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970); see also
Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995) (reaffirming Malooly).





[3]Appellant=s
demotion and suspension are not at issue in this case.  Appellant has since filed a grievance with
regard to those events pursuant to a collective bargaining agreement and is
pursuing his remedy in a labor arbitration under the terms of that
agreement.  





[4]In
addition to being an employee of SWBYPS, Burkhart also served as the office=s
union representative. 





[5]Compensatory
damages in defamation cases are divided into two categories: general and
special.  Peshak v. Greer, 13
S.W.3d 421, 427 (Tex. App.CCorpus Christi 2000, no
pet.).  General damages are damages for
injuries to character or reputation, injuries to feelings, mental anguish, and
other like injuries incapable of monetary valuation, Vista Chevrolet, Inc.
v. Barron, 698 S.W.2d 435, 441 (Tex. App.CCorpus
Christi 1985, no writ), while special damages involve some form of pecuniary or
economic loss  See Hurlbut v. Gulf
Atlantic Life Ins. Co., 749 S.W.2d 762, 767 (Tex. 1987).





[6]Innuendo
is the use of extrinsic evidence to prove a statement=s
defamatory nature.  Id. at
385.  It includes the aid of inducements,
colloquialisms, and explanatory circumstances. 
Id.

 





[7]Without
proof of special damages, Appellant=s slander per quod claim is
not actionable.  Kelly, 832 S.W.2d
at 94; Stearns, 543 S.W.2d at 662. 
Thus, we need not discuss the general damages sought in Appellant=s
amended petition.  See Kelly, 832
S.W.2d at 94.