Opinion issued December 4, 2003






:



     


In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00668-CV




SALLY SCOTT, INDIVIDUALLY 
AND D/B/A SUN CITY SKATE PARK, Appellant

V.

ROSS TANNER, Appellee




On Appeal from the 61st District Court 
Harris County, Texas
Trial Court Cause No. 01-41214




MEMORANDUM OPINION

          Appellant, Sally Scott, individually and d/b/a Sun City Skate Park (“Scott”),
brings this restricted appeal to challenge the no-answer default judgment obtained
against her by appellee, Ross Tanner (“Tanner”). We determine (1) whether the
record indicates that Scott was properly served with Tanner’s original petition; (2)
whether Tanner’s amended petition requested a more onerous judgment than Tanner’s
original petition; (3) whether legally sufficient evidence exists to support the trial
court’s liability findings against Scott; and (4) whether legally and factually sufficient
evidence exists to support the trial court’s damages award against Scott.
          We affirm.
Background Facts
          Scott operated Sun City Skate Park (“the park”), a community skateboarding
park. Scott hired Tanner as an employee of the park. After a couple of months, Scott
terminated Tanner’s employment. Four months later, the park was “robbed.”


 
Procedural History
          A couple of months after his termination, Tanner filed “Plaintiff’s Request for
Temporary Restraining Order, Permanent Injunction and Original Petition” (“original
petition”) in which he made the following allegations:
•        When Scott terminated Tanner’s employment, she told Tanner that he was
being terminated because Scott could no longer afford his salary and due to
disagreements over staff issues.
•        Following his termination from the park, and based on his success in
skateboarding competitions, expertise in the sport, and acquaintance with many
nationally known skateboarders, Tanner was hired by numerous suppliers of
skateboarding products to promote and sell their product lines.
 
•        When Scott’s skateboarding park was robbed in June 2001, Tanner was in
Ohio.
 
•        Scott accused Tanner of robbing the park.
 
•        No criminal charges were filed against Tanner related to the robbery.
 
•        Scott called manufacturing representatives with whom Tanner had business
contracts and told the representatives that Tanner had robbed her park. Scott
also told the representatives that they should not do business with Tanner and
stated that she would not place large orders for merchandise with them unless
they terminated their relationships with Tanner. 
 
•        Because of Scott’s communications, Tanner was denied access to
skateboarding parks in the Houston area, suffered a reduction in gross sales of
skateboarding related merchandise, has been denied business opportunities
with other skateboarding merchandise manufacturers, and lost customers who
would have otherwise taken skateboarding lessons from Tanner. 

          Based on these allegations, Tanner asserted causes of action against Scott for
slander, libel, and tortious interference with a contract. Tanner requested the trial
court to enter a temporary restraining order precluding Scott from contacting
businesses associated with the skateboarding industry or Tanner’s potential customers 
and communicating that (1) Tanner had robbed the park; (2) Tanner was a thief; and
(3) they should not do business with Tanner. Tanner also requested that, when the
case was tried, the temporary restraining order be converted into a permanent
injunction. In addition, Tanner requested actual damages, punitive damages, and
attorney’s fees. 
          Tanner later filed “Plaintiff’s First Amended Request for Temporary
Restraining Order, Temporary Injunction, Permanent Injunction and Original
Petition” (“amended petition”). Tanner’s amended petition differed from his original
petition in that it requested a temporary injunction in addition to the temporary
restraining order and permanent injunction. The conduct of Scott that Tanner sought
to enjoin remained unchanged from the original petition. 
          Although a return of citation was filed with the district clerk, indicating that
Scott was served with the original petition, Scott never answered Tanner’s petition. 
Based on Scott’s failure to answer, Tanner filed a motion for interlocutory default
judgment, requesting the trial court to (1) enter an interlocutory default judgment as
to liability and (2) set the matter for trial on the issue of damages. The trial court
signed an “Order Granting Interlocutory Default Judgment,” in which it ordered that
judgment be entered in favor of Tanner against Scott as to liability. Specifically, the
trial court ordered that judgment be entered that Scott committed libel and slander as
to Tanner and that Scott tortiously interfered in the contractual relationships of
Tanner and his customers.
          On a later date, the trial court conducted an evidentiary hearing at which
Tanner presented evidence to prove up his unliquidated damages. Following the
hearing, the trial court signed a final judgment awarding Tanner the following
damages against Scott: (1) $79,000 for lost profits; (2) $100,000 for mental anguish;
and (3) $179,500 in punitive damages. The record does not indicate whether Tanner
was awarded the injunctive relief requested.
          Four months later, Scott filed her notice of appeal, stating that she was
pursuing a restricted appeal. Attached to the notice of appeal was Scott’s affidavit
in which she claimed that she was never served with Tanner’s original petition.
Standard of Review
          A restricted appeal is a direct attack on a judgment. Roventini v. Ocular
Sciences, Inc., 111 S.W.3d 719, 721 (Tex. App.—Houston [1st Dist.] 2003, no pet.);
Hercules Concrete Pumping Serv., Inc. v. Bencon Mgmt. & Gen. Contracting Corp.,
62 S.W.3d 308, 309 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). The
elements necessary to succeed on a restricted appeal are as follows: (1) the notice of
restricted appeal must be filed within six months after the judgment is signed; (2) by
a party to the lawsuit; (3) who neither participated in the hearing that resulted in the
judgment nor filed a timely post-judgment motion or request for findings of fact and
conclusions of law; and (4) the face of the record must disclose the claimed error. 
Norman Communications v. Tex. Eastman Co., 955 S.W.2d 269, 270 (Tex. 1997)
(decided under predecessor writ-of-error practice); Barker CATV Constr. v. AMPRO,
Inc., 989 S.W.2d 789, 791 (Tex. App.—Houston [1st Dist.] 1999, no pet.). It is
undisputed that Scott complied with the first three elements.
 
Discussion
          In two sub-points in her first issue, Scott contends that error is apparent on the
face of the record because (1) she was never served with Tanner’s original petition
and (2) Tanner’s amended petition “was more onerous than the original petition.”
A.      Service of the Original Petition
          The return of service filed in this case reflects that Scott was served with
Tanner’s original petition on September 7, 2001. The return constitutes prima facie
evidence that Scott was served with the original petition. Primate Constr., Inc. v.
Silver, 884 S.W.2d 151, 152 (Tex. 1994); West Columbia Nat’l Bank v. Griffith, 902
S.W.2d 201, 206 (Tex. App.—Houston [1st Dist.] 1995, writ denied).
          The sole support for Scott’s contention that she was not served is Scott’s
affidavit attached to her notice of appeal in which Scott stated that she was not served
with Tanner’s original petition. Although review by restricted appeal affords review
of the entire case and thus permits the same scope of review as an ordinary appeal,
the face of the record must reveal the claimed error. See Norman Communications,
955 S.W.2d at 270; Barker CATV Constr., 989 S.W.2d at 794 (opinion on rehearing). 
The face of the record in a restricted appeal consists of the papers on file with the
court when it rendered judgment. Norman Communications, 955 S.W.2d at 270;
Barker CATV Constr., 989 S.W.2d at 794. Because a restricted appeal directly
attacks the judgment rendered by the trial court, we may not consider as part of the
record evidence or documents that were not before the trial court when it rendered
judgment. Roventini, 111 S.W.3d at 722; Barker CATV Constr., 989 S.W.2d at 794. 
          In the present case, Scott’s affidavit was not before the trial court when it
rendered judgment; thus, we may not consider it in determining whether error exists
on the face of the record. We conclude that the face of the record does not reveal
Scott’s claimed error, i.e., that she was not served with Tanner’s original petition. To
the contrary, the record indicates that Scott was served. 
B.      The Amended Petition
          Tanner does not deny that he failed to serve Scott with his amended petition. 
In her second sub-point, Scott contends that Tanner’s “amended petition was more
onerous and required service of a new citation” because it added a new “cause of
action” for temporary injunction.


 
            When a party has been served with citation for the original petition, new
citation for amended petitions is necessary for a party who has not appeared only
when the plaintiff, by an amended petition, seeks a more onerous judgment than
prayed for in the original pleading. Weaver v. Hartford Accident and Indem. Co., 570
S.W.2d 367, 370 (Tex. 1978); Palomin v. Zarsky Lumber Co., 26 S.W.3d 690, 693
(Tex. App.—Corpus Christi 2000, pet. denied). We must determine whether Tanner’s
amended petition, which requested the additional relief of a temporary injunction,
sought a more onerous judgment than did his original petition. We conclude that it
did not. 
          Tanner already sought permanent injunctive relief in his original petition,
which by its permanent nature is “more onerous” than temporary injunctive relief. 
Moreover, the conduct that Tanner sought to enjoin by way of both the temporary and
the permanent injunction was the same; namely, Tanner requested permanent and
temporary injunctive relief to enjoin Scott from communicating to any business
associated with the skateboarding industry, or any potential customer of Tanner, that
Tanner robbed her park. In other words, the subject matter of both the temporary and
permanent injunctions sought by Tanner was the same.
          In addition, unlike permanent injunctive relief, temporary injunctive relief does
not become part of a trial court’s judgment; rather, a temporary injunction is issued
before trial to preserve the status quo until trial on the merits. Butnaru v. Ford Motor
Co., 84 S.W.3d 198, 204 (Tex. 2002); see NMTC Corp. v. Conarroe, 99 S.W.3d 865,
867-68 (Tex. App.—Beaumont 2003, no pet.) (explaining differences between
permanent and temporary injunctions). Thus, by seeking the additional remedy of a
temporary injunction, Tanner was not seeking a more onerous judgment. 
          We overrule Scott’s first issue. C.No Evidence of Scott’s Liability
          In her second issue, Scott complains that Tanner presented “no probative
evidence” of Scott’s liability. Determination of whether error exists on the face of the
record in a restricted appeal can include a review of legal and factual sufficiency
claims. See Norman Communications, 955 S.W.2d at 270; Herbert v. Greater Gulf
Coast Enters., 915 S.W.2d 866, 870 (Tex. App.—Houston [1st Dist.] 1995, no writ).
          In support of her no-evidence challenge, Scott contends that Tanner’s amended
petition is deficient because Tanner does not have personal knowledge of the facts
alleged in the pleading relating to the slander claim. Scott characterizes the
allegations in Tanner’s amended petition as “naked accusations.” Despite Scott’s
contention, in his verification attached to the amended petition, Tanner stated as
follows: “I have read all the factual allegations and causes of action contained in
Plaintiff’s First Amended Request for Temporary Restraining Order, Permanent
Injunction and Original Petition [sic] and they are within his [sic] personal knowledge
and all true and correct.” 
          Scott also attacks Tanner’s verification on the basis that Tanner could not have
had knowledge of all of the facts alleged in the amended petition. Scott further
complains that Tanner could not have had personal knowledge of the “causes of
action” asserted in the amended petition as claimed in his verification. Scott points
out that only factual allegations can be within a person’s personal knowledge, not
“causes of action.” 
          Regardless of whether Scott is correct in her contentions on this point, Tanner’s
amended petition is not deficient. A plaintiff is not required to set out the evidence
in his petition on which he will ultimately rely to prove his claim. See Paramount
Pipe & Supply Co. v. Muhr, 749 S.W.2d 491, 494-95 (Tex. 1988). Even if a petition
contains evidentiary allegations, legal conclusions, minor defects, or technical
insufficiencies, judgment will stand if the defendant has fair notice of the claims
asserted. Stoner v. Thompson, 578 S.W.2d 679, 683 (Tex. 1979); Wallace v. Ramon,
82 S.W.3d 501, 503-04 (Tex. App.—San Antonio 2002, no pet.). Here, Tanner’s
petition gave Scott fair notice of the claims he asserted. 
          Moreover, a no-answer default judgment operates as an admission of the
material facts alleged in the plaintiff’s petition, except for unliquidated damages. 
Stoner, 578 S.W.2d at 684-85; Herbert, 915 S.W.2d at 872. The petition must
attempt to state a cause of action, give fair notice of the claim, and not affirmatively
disclose facts that defeat relief. Paramount Pipe & Supply, 749 S.W.2d at 494. 
Tanner’s amended petition


 properly alleged an action for slander. See Randall’s
Food Mkts. Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995) (“Slander is a
defamatory statement that is orally communicated or published to a third person
without legal excuse.”); see also Bennett v. Computer Assoc. Int’l, Inc., 932 S.W.2d
197, 200 (Tex. App.—Amarillo 1996, writ denied) (“One who falsely imputes to
another the crime of theft commits slander per se.”). 
          By defaulting, Scott admitted all of the allegations in Tanner’s amended
petition, including the allegations that Scott called persons in the skateboarding
industry, with whom Tanner had business relationships, and communicated the false
statement that Tanner had robbed her skateboarding park. We hold that Tanner’s
allegations admitted by default suffice to support Scott’s liability for slander. 
          We overrule Scott’s second issue to the extent that it pertains to Tanner’s
slander claim. Because Scott’s liability for slander supports the trial court’s award
of damages, we need not address Scott’s other contentions made in support of her
second issue; that is, Scott’s no-evidence challenges to Tanner’s libel and tortious-interference-of-contract claims. See Tex. R. App. P. 47.1.
D.      Legal and Factual Sufficiency of the Damages Evidence
          In her third issue, Scott contends that the evidence presented by Tanner was
legally and factually insufficient to support the trial court’s award of $79,500 in lost-profits damages, $100,00 in mental-anguish damages, and $179,500 in punitive
damages.
          1.       Lost Profits Damages
          When a specific attack is made on the legal or factual sufficiency of the
evidence to support the trial court’s determination of damages in a default judgment,
the appellant is entitled to a review of the evidence produced. Transport Concepts,
Inc. v. Reeves, 748 S.W.2d 302, 304 (Tex. App.—Dallas 1988, no writ) (citing Rogers
v. Rogers, 561 S.W.2d 172, 173-74 (Tex. 1978)). In reviewing a legal-insufficiency
claim, we consider all the evidence in the light most favorable to the prevailing party,
indulging every reasonable inference in that party’s favor. Associated Indem. Co. v.
CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998). In reviewing a factual-sufficiency challenge, we examine all the evidence and set aside the judgment only
if it is so against the great weight and preponderance of the evidence as to be
manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).
          At the evidentiary hearing on unliquidated damages (“the damages hearing”),
Tanner presented evidence of his income prior to Scott’s accusations that he robbed
her park. Tanner testified that he was employed as a sales representative selling
skateboarding-related merchandise to five companies at the time of Scott’s
accusations. Tanner stated that he was paid a 10 percent commission on each of the
five accounts. According to Tanner, after Scott accused him of robbery, the five
companies “had nothing to do with me anymore.” Tanner testified that it would take
three years for him to reestablish his reputation with these businesses.
          Tanner introduced into evidence a document calculating his lost revenues,
resulting from Scott’s slander. The document showed the amount of “yearly
purchases” of each of the five accounts. Tanner testified, and the document setting
out his damages calculations reflected, that his lost commissions on the five accounts,
at a rate of 10 percent, over a three-year period, totaled $77,400. 
          Tanner also testified that, as part of his “ordinary business,” he gave private 
skateboarding lessons. Tanner testified that he charged $35 an hour for the lessons. 
Tanner stated that it took six months for him to build a new client base following
Scott’s accusations. Tanner testified that, as a result of Scott’s statements, he lost
$2100 in fees associated with giving private lessons. Thus, Tanner’s evidence
showed that Scott’s slanderous statements caused him to lose a total of $79,500 in
revenues, which is the amount awarded by the trial court to Tanner for lost profits.
          On appeal, Scott contends that the evidence offered by Tanner was “internally
inconsistent.” However, the basis for Scott’s contention is not clear from her
briefing. Our review of the record discerns no “internal inconsistencies” in the
evidence presented at the damages hearing on which the trial court based its award
of lost-profits damages. 
          Scott also complains that the five businesses, which Tanner testified ceased
doing business with him following Scott’s accusations, were different companies than
those named in Tanner’s petitions. Scott also points out other minor factual
discrepancies between Tanner’s petitions and his testimony. This is of no
consequence to Scott’s sufficiency challenges. Pleadings are generally not competent
evidence, even if sworn or verified. Laidlaw Waste Systems (Dallas) v. City of
Wilmer, 904 S.W.2d 656, 660 (Tex. 1995). The record indicates that the purpose of
the damages hearing was to allow Tanner to offer evidence to prove up his damages. 
The evidence offered at that hearing was the evidence on which the trial court based
its damages award. Thus, to determine whether the evidence was legally and
factually sufficient to support the trial court’s award of damages, we review the
evidence offered at the hearing, not the factual and evidentiary allegations in Tanner’s
petitions.



          Lastly, Scott contends that Tanner was not qualified “as an expert” to testify
that it would take him three years to rebuild his reputation. Despite Scott’s
contentions, the record shows that Tanner was qualified to give such testimony. 
Tanner testified that he had “been in skateboarding 17, almost 18 years.” Tanner also
stated that he obtained his job as a sales representative for skateboarding-related
merchandise based on his contacts in the skateboarding community. Tanner testified
that he had been working as a sales representative for one and one-half years at the
time of the damages hearing. In sum, the evidence showed that Tanner was an
experienced skateboarder who earned his living from the sport. Based on his
extensive experience and specialized knowledge of skateboarding, Tanner was
qualified to testify as to the length of time it would take to rebuild his reputation with
his customers. 
          Applying the appropriate standards of review, we hold that the evidence was
legally and factually sufficient to support the trial court’s award of lost-profits
damages.
          2.       Evidence of Malice
          Scott also complains that Tanner offered insufficient evidence to support the
trial court’s award of mental anguish or punitive damages. 
                    a.       Mental anguish damages
          As alleged in Tanner’s amended petition, and as admitted by Scott’s failure to
answer, Scott made false statements to persons in the skateboarding industry accusing
Tanner of a crime, namely, robbing her park. A false statement that charges a person
with the commission of a crime is slander per se; thus no independent proof of
damage to the plaintiff’s reputation or of mental anguish is required, as the
defamation itself gives rise to a presumption of these damages. See Leyendecker &
Assocs., Inc. v. Wechter, 683 S.W.2d 369, 374 (Tex. 1984); Peshak v. Greer, 13
S.W.3d 421, 427 (Tex. App.—Corpus Christi 2000, no pet.); Knox v. Taylor, 992
S.W.2d 40, 60 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Accordingly, Tanner
was not required to offer proof of malice to recover mental-anguish damages from
Scott based on slander. 
                    b.       Punitive damages
          To recover exemplary damages for slander, Tanner was required to produce
evidence that Scott acted with malice. See Leyendecker, 683 S.W.2d at 374. For
purposes of exemplary damages, “malice” was defined at the time the trial court
signed the judgment in this case to mean (1) a specific intent by the defendant to
cause substantial injury to the claimant; or (2) an act or omission (a) that, when
viewed objectively from the standpoint of the actor at the time of its occurrence,
involves an extreme degree of risk, considering the probability and magnitude of the
potential harm to others, of which the actor has actual, subjective awareness, and (b)
with which the actor nevertheless proceeds with conscious indifference to the rights,
safety, or welfare of others. Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.12,
sec. 41.001, 1987 Tex. Gen. Laws 37, 44, amended by, Act of April 6, 1995, 74th
Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109 (amended 2003) (current
version at Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7) (Vernon Supp. 2004)). 
          The evidence necessary to prove malice must be “clear and convincing.” See
Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)(2) (Vernon Supp. 2004). Clear and
convincing evidence is that measure or degree of proof that will produce in the mind
of the trier of fact a firm belief or conviction as to the truth of the allegations sought
to be established. Id. § 41.001(2) (Vernon Supp. 2004); Transp. Ins. Co. v. Moriel,
879 S.W.2d 10, 31 (Tex. 1994).
          Evidence of malice is legally sufficient if, considered as a whole in the light
most favorable to the prevailing party, it rises to a level that would enable reasonable
and fair-minded persons to differ in their conclusions. KPH Consolidation, Inc. v.
Romero, 102 S.W.3d 135, 145 (Tex. App.—Houston [14th Dist.] 2003, pet. filed); see
also Lee Lewis Constr., 70 S.W.3d at 785; Gen. Motors Corp. v. Sanchez, 997 S.W.2d
584, 596 (Tex. 1999). Evidence of ordinary negligence alone is not enough to
establish malice. See Tex. Civ. Prac. & Rem. Code Ann. § 41.003(b) (Vernon Supp.
2004); N. Am. Van Lines, Inc. v. Emmons, 50 S.W.3d 103, 128 (Tex.
App.—Beaumont 2001, pet. denied).
          In conducting a factual-sufficiency review under the clear and convincing
standard required to sustain a finding of malice, we must determine whether the
evidence in the record is such that a factfinder could reasonably form a firm belief or
conviction about the truth of the allegations sought to be established. See Tex. Civ.
Prac. & Rem. Code Ann. § 41.003(a)(2); KPH Consolidation, 102 S.W.3d at 145. 
          Tanner testified that he called Scott and told her that he did not break into her
park. He explained to Scott that he was out of town at the time of the robbery. 
Tanner testified that Scott accused him of lying. After the conversation, Scott
continued to tell others in the skateboarding industry, and Tanner’s potential clients,
that Tanner was a thief and had robbed her park. Tanner testified that Scott continued
to accuse him of robbery even though no charges were ever brought against him.
          In support of her contention that Tanner made no showing of malice with
respect to his slander claim, Scott asserts that Tanner failed to present sufficient
evidence to support Scott’s liability for slander. Although not readily decipherable
from her briefing, Scott apparently reasons that if the evidence was insufficient to
establish liability for slander, then it was also insufficient to show that Scott
maliciously made the slanderous communications. However, as discussed above,
Tanner’s allegations in his amended petition, which were admitted by default, were
sufficient to support the trial court’s liability finding against Scott for slander.           Applying the appropriate standards of review, we hold that the evidence was
legally and factually sufficient for the trial court to have reasonably formed a firm
belief that Scott acted with malice when she told others in the skateboarding
community that Tanner had robbed her park.
          We overrule Scott’s third issue.
 

Conclusion
          We affirm the judgment of the trial court.



 
Laura Carter Higley
                                                             Justice

Panel consists of Justices Hedges, Nuchia, and Higley.